1

2

3

4

5

6

7

8

9

10

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

11 | MARK ROBERT QUIROZ,                    )    No. C 11-0016 LHK (PR)
                                           )
12 |            Plaintiff,                  )    AMENDED ORDER GRANTING
                                           )    IN PART AND DENYING IN PART
13 |    v.                                  )    DEFENDANT'S MOTION FOR
                                           )    SUMMARY JUDGMENT;
14 |                                        )    APPOINTING COUNSEL;
    D. SHORT,                               )    REFERRING CASE TO
15 |                                        )    SETTLEMENT PROCEEDINGS
                                           )
16 |            Defendant.                  )    (Docket No. 246)
    _____)

17

18 |        This order supersedes ECF Docket No. 308, which was filed in error.

19 |        Plaintiff, a state prisoner proceeding *pro se*, filed a third amended complaint under 42

20 | U.S.C. § 1983, arguing that prison official defendants violated his federal and state law rights.

21 | Defendant Sgt. D. Short has filed a motion for summary judgment. Plaintiff has filed an

22 | opposition, and defendant has filed a reply.[1] Having carefully considered the papers submitted,

23 | the court GRANTS in part and DENIES in part defendant's motion for summary judgment.

24 |                                      **BACKGROUND**

25 |        Plaintiff alleges that defendant: (1) violated plaintiff's First Amendment right to be free

26 | from retaliation; (2) violated plaintiff's right to association/marry; (3) conspired with other

27

28

---

[1] The remaining defendants have filed a separate motion for summary judgment, which is addressed in a separate order.

1  defendants to violate plaintiff's constitutional rights; and (4) violated state law.  In response,

2  defendant argues that he is entitled to summary judgment and qualified immunity.

3      The following facts are taken in the light most favorable to plaintiff.

4      Plaintiff has been confined in Pelican Bay State Prison ("PSBP") in the Secure Housing

5  Unit ("SHU") since February 1992.  (Third Am. Compl. ¶ 23.)  Defendant worked as a Sergeant

6  in PBSP's Institutional Gang Investigations Unit ("IGI") from February 2009 through March

7  2010.  (Short Decl. ¶ 2.)  In addition to responding to appeals of inmate administrative

8  grievances at the second level of review, defendant also monitored and controlled gang activities

9  at PBSP and within the SHU.  (*Id.* ¶¶ 3-4.)  Plaintiff is a validated member of the Mexican

10  Mafia.  (Pl. Depo. at 14:18-22.)  Members of the Mexican Mafia frequently communicate with

11  each other, as well as with members of the public, through the mail to engage in criminal

12  activity.  (Short Decl. ¶ 8.)

13      Defendant also had the responsibility of reviewing incoming and outgoing mail when the

14  IGI staff was short-handed.  (*Id.* ¶ 4.)  For incoming non-confidential mail, mail is inspected

15  prior to delivery to the inmate in order to, *inter alia*, prevent the introduction of contraband or

16  illegal communications.  (*Id.* ¶ 5.)  Heightened scrutiny of validated gang members' mail is

17  important because their mail often contains secret codes and instructions.  (*Id.* ¶ 6.)

18      Plaintiff alleges that in 2006, prison officials, including defendant, began to engage in a

19  series of retaliatory actions, mainly by tampering with plaintiff's incoming and outgoing mail.

20  Plaintiff claims that these actions were in retaliation for filing a lawsuit in *Quiroz v. Horel*, No.

21  05-2938 JF (N.D. Cal. filed July 19, 2005) ("*Quiroz I*"); for participating and assisting another

22  inmate's lawsuit in *Sandoval v. Tilton*, No. 08-0865 JW ("*Sandoval*");[2] and for filing grievances

23

24     [2]  On October 21, 2008, another inmate, Alfred Sandoval, asked plaintiff to submit a
declaration in *Sandoval.*  (Third Am. Compl. ¶ 58.)  The lawsuit alleged that the IGI and other

25  officers used excessive force against Sandoval.  (*Id.* ¶ 38.)  On January 4, 2009 and April 2,
2009, plaintiff mailed declarations to Sandoval in support of Sandoval's lawsuit.  (*Id.* ¶¶ 61, 64.)

26  From March 2009 through January 2010, plaintiff alleges he was impeded and frustrated by a
number of IGI officers, though plaintiff does not specifically name defendant as one of those

27  officers, in plaintiff's efforts to assist Sandoval after Sandoval requested plaintiff's legal

28  assistance.  (*Id.* ¶¶ 62-68.)

Amended Order Granting In Part and Denying in Part Defendant's Motion for Summary Judgment; Appointing
Counsel; Referring Case to Settlement Proceedings

1  from 2008 through 2010.[3]

2     On October 26, 2009, plaintiff submitted an administrative grievance challenging the

3  stopping of an incoming letter addressed to plaintiff from plaintiff's niece, Lorie Quiroz.  (Third

4  Am. Compl. ¶ 70.)  Co-defendants Officers Pimentel and Brandon informed plaintiff that the

5  letter was stopped because it was found to promote gang activities.  (*Id.*)  Plaintiff pointed out

6  that his niece was a mother and grandmother without an arrest record and that plaintiff believed

7  that the IGI prison staff misinterpreted the contents of the letter.  (*Id.*)  On December 1, 2009,

8  defendant interviewed plaintiff for purposes of plaintiff's appeal of the denial of his

9  administrative grievance.  Plaintiff asked defendant for proof that the letter promoted gang

10 activities, but defendant refused to provide it.  (*Id.*)  Plaintiff told defendant that "this stopping of

11 my niece's letter is ongoing retaliation and harassment by the IGI and ISU because of my lawsuit

12 and 602 appeals and you know that."  (Opp. at 8.)  On December 8, 2009, defendant

13 recommended that plaintiff's appeal be denied, and Warden Jacquez denied plaintiff's appeal at

14 the second level of review.  (Third Am. Compl. ¶ 70.)  Specifically, the second level of review

15 response stated that the letter was stopped because Lorie Quiroz was relaying information about

16 a gang affiliate; however, the response did not go into further detail about the contents of the

17 letter.  (*Id.*)  The letter also contained 40 embossed envelopes which were not gang related, and

18 those were provided to plaintiff.  (Short Decl. ¶ 10.)  Plaintiff appealed that decision, and also

19 complained that plaintiff was not permitted to mail the disallowed letter back to the sender, in

20 violation of California regulations.  (Third Am. Compl. ¶ 70.)  Plaintiff asserts that defendant

21 helped to conspire and further the ongoing retaliation against plaintiff by conducting a sham

22 investigation into the appeal of plaintiff's administrative grievance because plaintiff had

23 exercised his right to engage in protected conduct.  (*Id.*)

24    On January 13, 2010, plaintiff received two letters from his girlfriend, Vivian Chavez, in

25 which she stated that she received a letter written by plaintiff which was intended for another

26

27    [3]  Throughout this order, when the court refers to "protected conduct," the court is referring to
plaintiff's filing of *Quiroz I*, participating in *Sandoval*, and the filing of administrative

28 grievances.

Amended Order Granting In Part and Denying in Part Defendant's Motion for Summary Judgment; Appointing
Counsel; Referring Case to Settlement Proceedings

woman named Yvette Alvidrez.  (Third Am. Compl. ¶ 74.)  Plaintiff asserts that defendant deliberately enclosed the letter for Ms. Alvidrez into an envelope addressed to Ms. Chavez, along with a letter intended for Ms. Chavez.  (*Id.* ¶ 76.)  Plaintiff states that the letter for Ms. Alvidrez was dated two months earlier than his letter to Ms. Chavez.  (*Id.*)  Plaintiff complained that defendant's action was intended to destroy plaintiff's relationship with Ms. Chavez.  In an administrative grievance, plaintiff's complaint was processed as a staff complaint, and it was found that defendant did violate CDCR policy.  (*Id.*)  Plaintiff asserts that defendant switched the letters in retaliation for plaintiff's exercise of protected conduct.  (*Id.*)  Defendant admits that he purposely switched the address for Ms. Alvidrez's letter, but states that he did so in an effort to alert the women that plaintiff was being unfaithful to them.  (Short Decl. ¶ 13.)  Defendant reasoned that in his experience, inmates often wrote false love letters to vulnerable women in an effort to solicit money.  (*Id.*)  As a result of plaintiff's administrative grievance, it was found that defendant violated prison policy.  (Opp. at 30.)

On November 17, 2009, plaintiff placed in the mail a personal drawing to a friend, Lisa Gallegos.  (Third Am. Compl. ¶ 80.)  On January 20, 2010, Ms. Gallegos informed plaintiff that she never received the drawing.  (*Id.*)  On January 26, 2010, plaintiff filed a grievance stating that the drawing had been intentionally discarded.  On April 26, 2010, plaintiff's appeal of his administrative grievance was denied at the second level of review.  The response stated that there was no evidence that the IGI stopped the mail because there was no record of the required forms needed when mail is stopped.  (*Id.*)  Plaintiff appealed that finding and restated that he believed someone discarded the drawing because the Third Watch Officer picked up the mail with the drawing, processed the mail, and forwarded it to the IGI for monitoring.  (*Id.*)  In the federal complaint, plaintiff asserts that defendant was the one monitoring plaintiff's mail at this time.  (*Id.*)  Plaintiff claims that defendant discarded the drawing in retaliation for plaintiff's protected conduct.

On January 5, 2010, plaintiff received a letter from Ms. Alvidrez, but the stationary that was included with that letter had been discarded.  (*Id.* ¶ 83.)  Plaintiff claims that defendant

Amended Order Granting In Part and Denying in Part Defendant's Motion for Summary Judgment; Appointing Counsel; Referring Case to Settlement Proceedings

4

tampered with his mail in retaliation for plaintiff's protected conduct.

On February 12, 2010, defendant issued plaintiff a CDC 115 rules violation report ("RVR") for promoting gang activity.  (*Id.* ¶ 82.)  On January 6, 2010, defendant reviewed an outgoing letter written by plaintiff to Ms. Gallegos.  The RVR accused plaintiff of instructing Ms. Gallegos as to how to buy a dictionary for an inmate named Alfred.  (*Id.* ¶ 85.)  Defendant learned later that Alfred Sosa, another validated Mexican Mafia inmate member, had received a Random House Webster's Unabridged Dictionary.  (Short Decl. ¶ 16.)  The dictionary was purchased by Ms. Gallegos, who was a confirmed secretary of Mexican Mafia member Michael DeLia, who was also Sosa's former crime partner.  (*Id.*)  As a result, defendant believed that plaintiff facilitated a Ms. Gallegos, a gang affiliate, and her purchase of a dictionary for Sosa, and violated the rule of not knowingly promoting or assisting any gang.  (*Id.*)  Plaintiff was found guilty of promoting gang activity even though the reviewer admitted that the offense was not explicitly listed as a "serious offense".  (Third Am. Compl. ¶ 85.)  Plaintiff alleges that defendant conspired with others to create this false RVR in retaliation for plaintiff's protected conduct.

## ANALYSIS

I.   <u>Standard of Review</u>

Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Material facts are those which may affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  *Id.*

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no

Amended Order Granting In Part and Denying in Part Defendant's Motion for Summary Judgment; Appointing Counsel; Referring Case to Settlement Proceedings

5

1   reasonable trier of fact could find other than for the moving party.  But on an issue for which the

2   opposing party will have the burden of proof at trial, as is the case here, the moving party need

3   only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.*

4   at 325.

5          Once the moving party meets its initial burden, the nonmoving party must go beyond the

6   pleadings, and by its own affidavits or discovery, "set forth specific facts showing that there is a

7   genuine issue for trial." Fed. R. Civ. P. 56(e).  The court is only concerned with disputes over

8   material facts, and "factual disputes that are irrelevant or unnecessary will not be counted."

9   *Liberty Lobby, Inc.*, 477 U.S. at 248.  It is not the task of the court to scour the record in search

10  of a genuine issue of triable fact.  *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996).  The

11  nonmoving party has the burden of identifying, with reasonable particularity, the evidence that

12  precludes summary judgment.  *Id.*  If the nonmoving party fails to make this showing, "the

13   moving party is entitled to judgment as a matter of law."  *Celotex Corp.*, 477 U.S. at 323.

14         At the summary judgment stage, the court must view the evidence in the light most

15  favorable to the nonmoving party: if evidence produced by the moving party conflicts with

16  evidence produced by the nonmoving party, the judge must assume the truth of the evidence set

17  forth by the nonmoving party with respect to that fact.  *See Leslie v. Grupo ICA*, 198 F.3d 1152,

18  1158 (9th Cir. 1999).

19  II.     Legal Claims

20         A.     Retaliation

21         Plaintiff alleges that defendant retaliated against him in four separate instances for

22  exercising plaintiff's First Amendment rights.  First, plaintiff claims that defendant retaliated

23  against him by conducting a "sham investigation" regarding plaintiff's administrative grievance,

24  PBSP 09-03045, which challenged the stopping of Lorie Quiroz's incoming letter to plaintiff.

25  (Third Am. Compl. ¶ 70.)  Second, plaintiff claims that defendant retaliated against him by

26  intentionally discarding a personal drawing that plaintiff mailed to Ms. Gallegos, and

27  intentionally discarding stationary sent from Ms. Alvidrez to plaintiff.  (*Id.* ¶¶ 80, 83.)  Third,

28

1   plaintiff claims that defendant retaliated against him by sending a letter intended for Ms.

2   Alvidrez to plaintiff's girlfriend, Ms. Chavez.  (*Id.* ¶ 74.)  Finally, plaintiff alleges that defendant

3   retaliated against him by issuing an RVR against plaintiff for promoting gang activity.  (*Id.* ¶¶

4   82, 85.)

5          "Within the prison context, a viable claim of First Amendment retaliation entails five

6   basic elements:  (1) An assertion that a state actor took some adverse action against an inmate (2)

7   because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's

8   exercise of his First Amendment rights, and (5) the action did not reasonably advance a

9   legitimate correctional goal."  *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005)

10  (footnote omitted).  The prisoner must show that the type of activity in which he was engaged

11  was constitutionally protected, that the protected conduct was a substantial or motivating factor

12  for the alleged retaliatory action, and that the retaliatory action advanced no legitimate

13  penological interest.  *Hines v. Gomez*, 108 F.3d 265, 267-68 (9th Cir. 1997) (inferring retaliatory

14  motive from circumstantial evidence).  Retaliatory motive may be shown by the timing of the

15  allegedly-retaliatory act and other circumstantial evidence, as well as direct evidence.  *Bruce v.*

16  *Ylst*, 351 F.3d 1283, 1288-89 (9th Cir. 2003).  However, mere speculation that defendants acted

17  out of retaliation is not sufficient.  *Wood v. Yordy*, 753 F.3d 899, 904 (9th Cir. 2014) (citing

18  cases) (affirming grant of summary judgment where there was no evidence that defendants knew

19  about plaintiff's prior lawsuit, or that defendants' disparaging remarks were made in reference to

20  prior lawsuit).

21                 1.       Appeal of stoppage of Lorie Quiroz's letter

22          Defendant argues that there is an absence of evidence of a causal connection that

23  defendant's investigation of plaintiff's appeal of his administrative grievance in PBSP 09-03045

24  was motivated by plaintiff's protected conduct.  Plaintiff states that prior to this administrative

25  grievance, plaintiff had filed 18 grievances against IGI and Investigations Services Unit ("ISU")

26  officers for a variety of reasons.  (Opp. at 16.)  Plaintiff further alleges that the timing of events

27  constitute circumstantial evidence that defendant conducted this "sham investigation" in

28

Amended Order Granting In Part and Denying in Part Defendant's Motion for Summary Judgment; Appointing
Counsel; Referring Case to Settlement Proceedings

retaliation for plaintiff's protected conduct.

To raise a triable issue as to motive, plaintiff must offer "either direct evidence of retaliatory motive or at least one of three general types of circumstantial evidence [of that motive]." *McCollum v. California Dept. of Corrections and Rehabilitation*, 647 F.3d 870, 882 (9th Cir. 2011) (quoting *Allen v. Iranon*, 283 F.3d 1070, 1077 (9th Cir. 2002)).  To survive summary judgment, therefore, plaintiff must "present circumstantial evidence of motive, which usually includes: (1) proximity in time between protected speech and the alleged retaliation; (2) [that] the [defendant] expressed opposition to the speech; [or] (3) other evidence that the reasons proffered by the [defendant] for the adverse . . . action were false and pretextual." *McCollum*, 647 F.3d at 882 (internal quotation marks and citation omitted).

Defendant asserts, and plaintiff does not refute, that defendant was unaware of any *specific* grievances or lawsuits of which plaintiff was a part.  Plaintiff alleges that on December 1, 2009, as defendant was finishing up his interview with plaintiff, plaintiff attempted to obtain proof that the contents of the letter promoted gang activity, but defendant would not go into detail about the contents of the letter.  (Opp. at 22-23.)  Plaintiff asked defendant how the letter promoted gang activity if defendant did not know who the person mentioned in the letter was, to which defendant responded, "Because [of] what is written in the letter."  (*Id.* at 23.)  Plaintiff then replied that plaintiff still did not understand how the letter promoted gang activity and accused defendant of knowing that the stopping of the letter was actually ongoing retaliation by the IGI and ISU because of plaintiff's protected conduct.  (*Id.*)  At that point, defendant walked away without responding.  (*Id.*)  Viewing the evidence in the light most favorable to plaintiff, defendant learned that plaintiff had filed administrative grievances and engaged in litigation against the IGI and ISU when plaintiff told defendant so at the end of the interview.

Defendant denies, and there is no evidence to support, that defendant knew about any of plaintiff's litigation actions or grievances *prior* to the conclusion of defendant's interview with plaintiff on December 1, 2009.  When plaintiff accused defendant of "knowing" that the stopping of the letter was due to ongoing retaliation, the evidence shows that defendant had already

Amended Order Granting In Part and Denying in Part Defendant's Motion for Summary Judgment; Appointing Counsel; Referring Case to Settlement Proceedings

8

completed his interview with plaintiff, and told plaintiff that the contents of the letter promoted gang activity.  (Opp. at 23.)

In addition, there is no other evidence of retaliatory motive.  *See McCollum*, 647 F.3d at 882.  First, there is no proximity in time between plaintiff's 2005 filing of *Quiroz I*, plaintiff's 2009 participation in *Sandoval*, or any specific grievance for which defendant allegedly retaliated.  *Quiroz I* concluded in 2008, and defendant was not working as a Sargeant in the IGI at that time.  (Short Decl. ¶ 2.)  Moreover, defendant was not named as a defendant in *Sandoval*, and plaintiff has not offered any evidence that defendant knew about *Sandoval*, or had anything to do with plaintiff's attempts to assist Sandoval in the litigation.  Second, there is no evidence that defendant expressed opposition to the protected speech.  Third, plaintiff offers no evidence that the recommendation to deny plaintiff's appeal at the second level was false or pretextual. *See Wood*, 753 F.3d at 904-05 (speculation on defendant's motive is insufficient to defeat summary judgment).  Finally, while plaintiff had filed an unrelated administrative grievance on October 12, 2009 (Third Am. Compl. ¶ 69), which was the most recently filed grievance prior to this "sham investigation," plaintiff does not allege that any of plaintiff's prior grievances or previous litigation efforts involved defendant, and there is no apparent reason why plaintiff's grievances or litigation efforts would have resulted in any retaliatory motive on defendant's part. *See Wood*, 753 F.3d at 904; *see, e.g.*, *Buchanan v. Garza*, No. 08-cv-1290 BTM (WVG), 2012 WL 1059894, *5 (S.D. Cal. March 27, 2012) (granting summary judgment to defendants when plaintiff "has offered no evidence to support his claim that the alleged refusal to process his legal mail was in retaliation for filing previous grievances against other correctional officers"); *Murphy v. Grenier*, No. 09-2132, 406 Fed. Appx. 972, 975 (6th Cir. Jan. 19, 2011) (unpublished memorandum disposition) (affirming the grant of summary judgment when prisoner failed to "allege specific facts linking the prior grievances against other . . . prison personnel" with prison official's actions).

To the extent plaintiff asserts that defendant is liable as a supervisor, this claim also fails. A supervisor may be liable under section 1983 upon a showing of (1) personal involvement in

Amended Order Granting In Part and Denying in Part Defendant's Motion for Summary Judgment; Appointing Counsel; Referring Case to Settlement Proceedings

9

the constitutional deprivation or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *Henry A. v. Willden*, 678 F.3d 991, 1003-04 (9th Cir. 2012). A plaintiff must also show that the supervisor had the requisite state of mind to establish liability, which turns on the requirement of the particular claim – and, more specifically, on the state of mind required by the particular claim – not on a generally applicable concept of supervisory liability. *Oregon State University Student Alliance v. Ray*, 699 F.3d 1053, 1071 (9th Cir. 2012). Here, that state of mind is one of deliberate indifference. *See id.* at 1074-75 & n.18.

The court has already determined that plaintiff has not demonstrated a genuine issue of material fact regarding defendant's personal involvement in this retaliation claim. Moreover, plaintiff does not set forth any evidence to support a theory of a causal connection between defendant's conduct and the constitutional violation, much less that defendant's recommendation to deny plaintiff's administrative grievance was based on deliberate indifference.

In fact, plaintiff merely makes a blanket assertion that, with respect to the denial of plaintiff's administrative grievance regarding the stopped letter from Lorie Quiroz, defendant and other supervisors had "already been given notice of retaliation and misconduct . . . and failed to lawfully administer, train, and supervise . . . ." (Third Am. Compl. ¶ 70.) These allegations are conclusory and unsupported by sufficient factual content that would allow the claims to meet the pleading standard as articulated in *Iqbal*. *Compare Starr v. Baca*, 652 F.3d 1202, 1216-17 (9th Cir. 2011) (reversing dismissal of claim against supervisor defendant sued in his official capacity for an attack against an inmate involving prison deputies, where plaintiff made "detailed factual allegations that go well beyond reciting the elements of a claim of deliberate indifference") *with Hydrick v. Hunter*, 669 F.3d 937, 941-42 (9th Cir. 2012) (dismissing Section 1983 claim against supervisors in their individual capacities where "instead of the detailed factual allegations in *Starr* . . . plaintiffs' complaint is based on conclusory allegations and generalities, without any allegation of the specific wrong-doing by each defendant").

Accordingly, defendant is entitled to summary judgment on this portion of the retaliation

Amended Order Granting In Part and Denying in Part Defendant's Motion for Summary Judgment; Appointing Counsel; Referring Case to Settlement Proceedings

10

1    claim.[4]

2                    2.    Lost drawing to Lisa Gallegos and lost stationary from Ms. Alvidrez

3            Defendant argues that there is an absence of evidence that defendant acted adversely in

4    either of these instances.  Specifically, defendant asserts that plaintiff has not presented evidence

5    to support plaintiff's theory that defendant discarded or lost the items.

6            On November 17, 2009, plaintiff placed a hand-drawn picture into an envelope addressed

7    to Ms. Gallegos, which was picked up by the unit floor officer and delivered to the IGI for

8    review.  (Opp. at 17-18.)  On January 5, 2010, plaintiff received a letter from Ms. Alvidrez and

9    learned that the accompanying stationary that Ms. Alvidrez had sent was not included with the

10   letter.  (*Id.* at 27.)  Plaintiff alleges that because defendant's duty from February 2009 through

11   March 2010 included monitoring incoming and outgoing mail for gang members, defendant must

12   have discarded the drawing and stationary in retaliation for plaintiff's protected conduct.

13   Defendant submits evidence that he only monitored mail in limited circumstances – either when

14   it was brought to his attention by other officers, or when the IGI was short-handed.  (Short Decl.

15   ¶¶ 4, 14.)  Defendant further declares that he never saw or discarded any drawing sent from

16   plaintiff to Ms. Gallegos nor any mail sent from plaintiff and does not know anything about

17   stationary sent from Ms. Alvidrez to plaintiff.  (*Id.* ¶¶ 14, 19.)

18           Based on this record, plaintiff has not alleged "factual content that allows the court to

19   draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*

20   *v. Iqbal*, 556 U.S. 662, 668 (2009).  That is, plaintiff has not alleged more than a "sheer

21   possibility" that defendant acted unlawfully by destroying or discarding this drawing.  *See id.*

22   Plaintiff's assertion that one of defendant's duties was to monitor incoming and outgoing mail

23   for gang members is sufficient only to show that it is conceivable that defendant discarded these

24   items.  However, plaintiff has also stated that co-defendant Pimental, another IGI officer,

25   handled all of plaintiff's mail between September 2009 through January 2010.  (Third Am.

26

27           [4]  Because the court grants summary judgment on this claim, it will not address defendant's
28   alternative argument that he is entitled to qualified immunity.

Compl. ¶ 83.)  In order for plaintiff to demonstrate the existence of genuine issues of material

facts, he must "show more than the mere existence of a scintilla of evidence."  *In re Oracle*

*Corp. Securities Litigation*, 627 F.3d 376, 387 (9th Cir. 2010).  Plaintiff has not done so here.

*See, e.g.*, *Thomas v. Wilber*, No 10-cv-00006 AWI SKO PC, 2014 WL 972156, at *23 (E.D. Cal.

March 12, 2014) (report and recommendation granting summary judgment to defendants when,

although plaintiff claimed defendants tampered with his food, defendants denied it, and plaintiff

submitted no admissible evidence linking defendants to allegation); *Thompson v. Kernan*, No.

07-cv-00572 WNP PC, 2009 WL 3244711, at *4 (E.D. Cal. Oct. 6, 2009) (dismissing for failure

to state a claim plaintiff's allegations that individual prison guards tampered with his mail when

plaintiff's "only factual allegations . . . [are] . . . that he has not received responses to his mail,

and the fact that defendants work in the same building that plaintiff is housed in), *rev'd in part*

*on other grounds by* No. 11-16546, 479 Fed. Appx. 776 (9th Cir. July 12, 2012) (unpublished

memorandum disposition); *Andrews v. Guzman*, No. S-04-1107 JAM GGH P, 2009 WL 604943,

at *10-11 (E.D. Cal. March 9, 2009) (concluding that plaintiff's speculative presumption that

defendant transferred his property because defendant engaged in prior conflicts with plaintiff

was insufficient to outweigh defendant's declaration that defendant did not tamper with the

property).

　　　　Accordingly, defendant is entitled to summary judgment on these two retaliation claims

regarding the lost drawing and the lost stationary.[5]

### 3.   Sending Ms. Aldrivez's letter to Ms. Chavez

　　　　Defendant argues that there is an absence of evidence that defendant sent the letter

intended for Ms. Aldrivez to Ms. Chavez for the purpose of retaliating against plaintiff because

of plaintiff's protected conduct.  In other words, defendant argues that plaintiff has failed to

demonstrate a genuine issue of material fact regarding the causal connection between

defendant's actions and plaintiff's protected conduct.

---

[5]   Because the court grants summary judgment on this claim, it will not address defendant's
alternative argument that he is entitled to qualified immunity.

Amended Order Granting In Part and Denying in Part Defendant's Motion for Summary Judgment; Appointing
Counsel; Referring Case to Settlement Proceedings

1    The undisputed facts in the record show that at the end of December 2009 (Opp. at 31),

2    defendant intentionally sent Ms. Chavez plaintiff's letter for Ms. Alvidrez.  (Short Decl. ¶ 13.)

3    Plaintiff argues that the timing of defendant's action is suspect because plaintiff had filed

4    grievances for several years, including four in October 2009.  (Opp. at 30-32.)  Moreover,

5    plaintiff's letter to Ms. Alvidrez was dated and given to prison officials on October 25, 2009, but

6    it appears that defendant held onto that letter for approximately two months before defendant

7    sent it, along with a letter for Ms. Chavez, to Ms. Chavez.

8    Plaintiff argues that defendant mailed plaintiff's letter for Ms. Alvidrez to Ms. Chavez in

9    an effort to destroy plaintiff's relationship with Ms. Chavez in retaliation for plaintiff's filing of

10   grievances and litigation efforts.  Plaintiff claims that defendant sent this letter only 27 days after

11   defendant interviewed plaintiff on December 1, 2009 for plaintiff's appeal of the denial of his

12   administrative grievance about the stopped letter from Lorie Quiroz.  (*Id.* at 30.)  Plaintiff

13   characterizes the end of the interview as a "heated argument" where plaintiff accused defendant

14   of knowing about the ongoing retaliation from prison officials.  (*Id.*)

15   Here, the proximity in time between plaintiff's October 26, 2009 PBSP 09-3045

16   (challenging the stopping of Lorie Quiroz's letter), plaintiff's "heated" argument with defendant

17   on December 1, 2009, and defendant's purposeful mailing of plaintiff's letter for Ms. Alvidrez to

18   Ms. Chavez at the end of December 2009 was a matter of weeks.  Suspect timing, without more,

19   is usually not enough to show retaliatory intent.  *See Pratt*, 65 F.3d at 808.  However, defendant

20   admits that he intentionally sent the letter to Ms. Chavez.  Defendant asserts that he did so to

21   alert both women that plaintiff was being unfaithful, and that, in defendant's experience, inmates

22   often con vulnerable women to solicit money from them.  (Short Decl. ¶ 13.)  Defendant feared

23   that plaintiff was doing this to the two women.  (*Id.*)  Defendant does not dispute that he held

24   onto Ms. Alvidrez's letter for approximately two months before sending it to Ms. Chavez along

25   with plaintiff's letter intended for Ms. Chavez.  This leads to an inference that defendant's action

26   was not a spur of the moment idea, but a calculated and planned decision.  Moreover,

27   defendant's "fear" that plaintiff was conning Ms. Alvidrez and Ms. Chavez out of money is

28

Amended Order Granting In Part and Denying in Part Defendant's Motion for Summary Judgment; Appointing
Counsel; Referring Case to Settlement Proceedings

1    without any factual support.  Defendant does not allege that plaintiff's letter to either Ms.

2    Alvidrez or Ms. Chavez included any solicitation of money, nor does defendant provide any

3    evidence supporting his "fear."  At this stage, the court must view the evidence in the light most

4    favorable to plaintiff.  The court finds that there is a genuine issue of material fact as to whether

5    defendant's proffered explanation is pretextual.  *Cf. Chuang v. University of Cal. David, Board*

6    *of Trustees*, 225 F.3d 1115, 1127 (9th Cir. 2000) ("We have stated that a plaintiff can prove

7    pretext . . . indirectly, by showing that the employer's proffered explanation is "unworthy of

8    credence" because it is internally inconsistent or otherwise not believable.").

9         Accordingly, based on the fact that defendant purposefully held plaintiff's letter for Ms.

10   Alvidrez then purposefully sent plaintiff's letter for Ms. Alvidrez to Ms. Chavez, the proximity

11   in time, and the inference that defendant's reason was pretextual, the court finds that there is a

12   genuine issue of material dispute regarding whether defendant harbored a retaliatory motive.

13        Defendant also argues that he is entitled to qualified immunity.  The defense of qualified

14   immunity protects "government officials . . . from liability for civil damages insofar as their

15   conduct does not violate clearly established statutory or constitutional rights of which a

16   reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  A

17   court considering a claim of qualified immunity must determine whether the plaintiff has alleged

18   the deprivation of an actual constitutional right and whether such right was clearly established

19   such that it would be clear to a reasonable officer that his conduct was unlawful in the situation

20   he confronted. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).  "[U]nder either prong,

21   courts may not resolve genuine disputes of fact in favor of the party seeking summary

22   judgment," and must, as in other cases, view the evidence in the light most favorable to the non-

23   movant.  *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (per curiam).

24        In considering whether a defendant is entitled to qualified immunity, the inquiry must

25   focus on the time of the conduct, i.e., whether the officer's acts were reasonable in light of the

26   information he possessed at the time he acted, rather than its aftermath and effect because no

27   officer can observe whether his retaliation has successfully chilled a prisoner's rights until long

28

Amended Order Granting In Part and Denying in Part Defendant's Motion for Summary Judgment; Appointing
Counsel; Referring Case to Settlement Proceedings

1  after deciding to act. *Rhodes*, 408 F.3d at 570.

2      It is clearly established that retaliating against a prisoner for his use of the prison

3  grievance system violates a prisoner's constitutional rights. *See id.* at 567; *Pratt*, 65 F.3d at 806

4  (stating the "prohibition against retaliatory punishment is "clearly established law" in the Ninth

5  Circuit, for qualified immunity purposes"). Viewing the evidence in the light most favorable to

6  plaintiff, it would have been clear to a reasonable prison official that his conduct was unlawful at

7  the time it occurred. Here, it would have been clear to defendant that purposefully holding onto

8  plaintiff's letter for Ms. Alvidrez and purposefully sending the letter for Ms. Alvidrez to Ms.

9  Chavez in retaliation for plaintiff's protected conduct violated the law.

10      Accordingly, defendant is not entitled to summary judgment on this claim

11          4.      RVR for requesting dictionary for Alfred

12      Plaintiff claims that on February 12, 2010, defendant issued an RVR against him in

13  retaliation for plaintiff's protected conduct. The RVR charged plaintiff with promoting gang

14  activity. It stated that on February 12, 2010, defendant learned that inmate Alfred Sosa, a

15  validated Mexican Mafia member, received a Random House Webster's Unabridged Dictionary

16  which had been purchased by Ms. Gallegos. (MSJ, Ex. G.) Defendant then remembered that, on

17  January 6, 2010, defendant had reviewed a letter written by plaintiff to Ms. Gallegos, giving her

18  the information needed to buy a Random House Unabridged Dictionary for "Alfred." (*Id.*) The

19  RVR presumed that plaintiff's reference to "Alfred" referred to inmate Alfred Sosa, a Mexican

20  Mafia gang member. Also, based on a 2005 prison confidential memorandum, Short knew that

21  Ms. Gallegos was the secretary of Michael DeLia, Sosa's crime partner. According to the 2005

22  prison confidential memorandum, DeLia and Sosa assassinated DeLia's wife for allegedly

23  talking to authorities about the Mexican Mafia gang. Based on that information, defendant

24  issued an RVR to plaintiff for promoting gang activity, in violation of California Code of

25  Regulations, title 15 § 3023. D. Barneburg approved the issuance of the RVR. Senior Hearing

26  Officer Coulter presided over the disciplinary hearing and found plaintiff guilty of promoting

27  gang activity.

28

Amended Order Granting In Part and Denying in Part Defendant's Motion for Summary Judgment; Appointing Counsel; Referring Case to Settlement Proceedings

15

Defendant argues that plaintiff has failed to show a causal connection between the issuance of the RVR and plaintiff's protected conduct, and also that the RVR constituted a legitimate penological goal of prison security.  Plaintiff responds that defendant issued the RVR on February 12, 2010, and the timing of the issuance of the RVR raises an inference that defendant acted with a retaliatory motive.  (Opp. at 33-34.)

To support plaintiff's assertion that circumstantial evidence supports an inference of retaliatory motive, plaintiff asserts that defendant knew that plaintiff had filed grievances and engaged in litigation against prison officials on December 1, 2009 when plaintiff informed defendant of such in a "heated" argument.  (Opp. at 36.)  Plaintiff further states that plaintiff had filed 25 administrative grievances against IGI and ISU officers between October 2006 and February 2010, and that 10 of those grievances were filed from October 2009 through February 2010, during the time when defendant was monitoring plaintiff's mail.  (*Id.* at 36.)  Plaintiff argues that four of plaintiff's administrative grievances were directed at defendant's behavior, i.e., the sending of Ms. Alvidrez's letter to Ms. Chavez, the discarding of plaintiff's drawing, the "sham investigation" of Lorie Quiroz's stopped letter, and the discarding of Ms. Alvidrez's stationary intended for plaintiff.  (*Id.*)

Here, the proximity in time between plaintiff's December 1, 2009 "heated" argument with defendant regarding PBSP 09-3045 (challenging the stopping of Lorie Quiroz's letter) and the February 12, 2010 issuance of the RVR was approximately two months.  Moreover, there is a reasonable inference that defendant knew about the staff complaint plaintiff filed against him, PBSP 10-0519, on January 24, 2010 regarding the switching of Ms. Alvidrez's letter.  The grievance was reviewed as a staff complaint response, and assigned to the second level of review on February 11, 2010.  (*Id.*, Ex. 36 at 343.)  As part of the confidential inquiry, it was noted that defendant was interviewed.  (*Id.*)  Defendant later admitted that he was the IGI officer who purposefully sent plaintiff's letter for Ms. Alvidrez to Ms. Chavez.  On February 12, 2010, defendant issued the challenged RVR against plaintiff.  In addition, defendant does not contend that he was unaware of plaintiff's protected conduct.

Amended Order Granting In Part and Denying in Part Defendant's Motion for Summary Judgment; Appointing Counsel; Referring Case to Settlement Proceedings

1    In addition, the court finds that there is a reasonable inference that defendant's

2  explanation for the RVR was pretextual.  The RVR stated that plaintiff asked Ms. Gallegos to

3  purchase a particular dictionary for inmate Sosa, who is also a Mexican Mafia member.  Based

4  on such evidence, in addition to a 2005 prison confidential memorandum indicating that Ms.

5  Gallegos was the secretary of Sosa's crime partner, defendant issued an RVR for promoting gang

6  activity in violation of California Code of Regulations, title 15 § 3023.[6]

7    However, the undisputed evidence shows that the substance of plaintiff's letter concerns

8  the request to buy a new dictionary for someone named Alfred.  (Docket No. 254, Ex. 31.)

9  Defendant does not allege, nor is there evidence demonstrating, that the letter contained coded or

10  gang-related messages.  In fact, defendant does not assert how plaintiff's request to Ms. Gallegos

11  to purchase a new dictionary for another inmate, who is also a gang member, promotes, furthers,

12  or assists a gang in violation of Section 3023.  In short, defendant does not attempt to explain

13  how plaintiff's request to purchase a new dictionary for Alfred "unlawfully promoted and

14  assisted gang activity" or was a threat to prison security.  (Short Decl. ¶ 17.)

15    Moreover, an RVR is issued for a serious rules violation.  The California Code of

16  Regulations gives a non-exhaustive list of examples of serious rules violations to include such

17  circumstances as: use of force or violence against another person, a breach of or hazard to

18  facility security, a serious disruption of facility operations, manufacturing a controlled substance,

19  and willfully inciting others to commit an act of force or violence.  *See* Cal. Code Regs., tit. 15, §

20  3015.  Here, there is an absence of evidence showing how plaintiff's letter requesting the buying

21

22    [6] Section 3023 provides: "(a) Inmates and parolees shall not knowingly promote, further or
assist any gang as defined in section 3000.  (b) Gangs, as defined in section 3000, present a
23  serious threat to the safety and security of California prisons."  15 Cal. Code Regs. § 3023
24  (2010).  Section 3000 defines "gang" as, "Gang means any ongoing formal or informal
organization, association or group of three or more persons which has a common name or
25  identifying sign or symbol whose members and/or associates, individually or collectively,
engage or have engaged, on behalf of that organization, association or group, in two or more acts
26  which include, planning, organizing threatening, financing, soliciting, or committing unlawful
acts or acts of misconduct classified as serious pursuant to section 3315."  Cal. Code Regs., tit.
27  15, § 3000.

28

Amended Order Granting In Part and Denying in Part Defendant's Motion for Summary Judgment; Appointing
Counsel; Referring Case to Settlement Proceedings

of a new dictionary for another inmate reaches the level of a serious rule violation.  Indeed, at the conclusion of the disciplinary hearing, Coulter admitted that "this offense is not explicitly listed [as a serious rule violation] under CCR 3315 as a serious offense" but then justified the guilty finding because promoting gang activity represents a serious threat to prison security.  (Nimrod Decl., Ex. W.)

Here, the disconnect between the issuance of, and the stated reasons for, the RVR and the offending letter leads to a reasonable inference that those reasons are pretextual.

Defendant also argues that there was a legitimate penological goal for issuing the RVR, i.e., it is clear that prisons have a legitimate penological interest in stopping prison gang activity.  *See Bruce*, 351 F.3d at 1289.  However, the Ninth Circuit has cautioned that "prison officials may not defeat a retaliation claim on summary judgment simply by articulating a general justification for a neutral process, when there is a genuine issue of material fact as to whether the action was taken in retaliation for the exercise of a constitutional right."  *Id*.  Here, because there is a genuine issue of material fact as to retaliatory motive, defendant cannot rely on the prison's legitimate penological interest in prison security to succeed on his motion for summary judgment.  Moreover, based on the absence of evidence supporting the issuance of the RVR for promoting gang activity, the court finds that there is also a genuine issue of material fact as to whether the issuance of the RVR reasonably advanced a legitimate penological goal.

Viewing the evidence in the light most favorable to plaintiff, based on the proximity in time, the inference that defendant's reason for issuing the RVR was pretextual, and the inference that the issuance of the RVR did not reasonably advance a legitimate penological goal, the court finds that there are genuine issues of material fact regarding whether defendant retaliated against plaintiff.

Alternatively, defendant argues that he is entitled to qualified immunity.  Viewing the evidence in the light most favorable to plaintiff, defendant is not entitled to qualified immunity.  Here, it would have been clear to defendant that issuing an RVR in retaliation for plaintiff's protected conduct would violate the law.

Amended Order Granting In Part and Denying in Part Defendant's Motion for Summary Judgment; Appointing Counsel; Referring Case to Settlement Proceedings

1    Accordingly, defendant is not entitled to summary judgment on this claim.

2    B.    Right to Intimate Association

3    Liberally construed, plaintiff alleges that defendant's purposeful act of sending a letter

4    for Ms. Alvidrez to Ms. Chavez impeded plaintiff's fundamental right to intimate association and

5    interfered with plaintiff's relationship with Ms. Chavez.  In response, defendant argues that

6    plaintiff and Ms. Chavez do not have the kind of relationship protected under the right of

7    association; that defendant's actions did not prevent plaintiff from freely associating with Ms.

8    Chavez; and that defendant is entitled to qualified immunity.

9    As previously stated, the defense of qualified immunity protects "government officials . .

10   . from liability for civil damages insofar as their conduct does not violate clearly established

11   statutory or constitutional rights of which a reasonable person would have known." *Fitzgerald*,

12   457 U.S. at 818.  The inquiry of whether a constitutional right was clearly established must be

13   undertaken in light of the specific context of the case, not as a broad general proposition.

14   *Saucier v. Katz*, 533 U.S. 194, 202 (2001).  The relevant, dispositive inquiry in determining

15   whether a right is clearly established is whether it would be clear to a reasonable officer that his

16   conduct was unlawful in the situation he confronted.  *Id.*  In other words, "existing precedent

17   must have placed the statutory or constitutional question beyond debate." *Carroll v. Carman*,

18   135 S. Ct. 348, 350 (2014).

19   Thus, the court must decide whether a prisoner's right to intimate association was clearly

20   established such that it was sufficiently clear that a reasonable official would have understood

21   that defendant's conduct violated that right.  *See id.*  A court determining whether a right was

22   clearly established looks to "Supreme Court and Ninth Circuit law existing at the time of the

23   alleged act." *Community House, Inc. v. Bieter*, 623 F.3d 945, 967 (9th Cir. 2010) (citing

24   *Osolinski v. Kane*, 92 F.3d 934, 936 (9th Cir. 1996)).

25   It is well established that "implicit in the right to engage in activities protected by the

26   First Amendment [is] a corresponding right to associate with others. . . ." *Roberts v. United*

27   *States Jaycees*, 468 U.S. 609, 622 (1984).  The Amendment protects "certain intimate human

28   relationships . . . that presuppose deep attachments and commitments to the necessarily few other

Amended Order Granting In Part and Denying in Part Defendant's Motion for Summary Judgment; Appointing
Counsel; Referring Case to Settlement Proceedings

individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctively personal aspects of one's life." *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1188 (9th Cir. 1995) (citing *Board of Directors of Rotary Int'l v. Rotary Club*, 481 U.S. 537, 545 (1987) (internal quotation marks omitted).

The Supreme Court has recognized two types of freedom of association. First, the Supreme Court recognized that "choices to enter into and maintain certain intimate human relationships must be secured against undue intrusion by the State because of the role of such relationships in safeguarding the individual freedom that is central to our constitutional scheme." *Roberts*, 468 U.S. 609, 617-18 (1984). This freedom to enter into intimate human relationships is not protected by the First Amendment, but by the Fourteenth Amendment. *See IDK, Inc. v. Cnty. of Clark*, 836 F.2d 1185, 1192 (9th Cir. 1988) ("In protecting certain kinds of highly personal relationships, the Supreme Court has most often identified the source of the protection as the due process clause of the fourteenth amendment, not the first amendment's freedom to assemble."). Second, the Supreme Court recognizes a right to associate for the purpose of engaging in those activities protected by the First Amendment. *Roberts*, 468 U.S. at 618.

Plaintiff's claim is more appropriately categorized under the Fourteenth Amendment right of intimate association rather than the First Amendment. The Supreme Court has stated that the Constitution protects "certain kinds of highly personal relationships," *Roberts*, 468 U.S. at 618, 619-20. The protection is not restricted to relationships among family members. *See Board of Directors of Rotary Int'l*, 481 U.S. at 545. Outside of the prison context, the Supreme Court has intimated that there is a right to maintain certain familial relationships. *See Overton v. Bazzetta*, 539 U.S. 126, 131 (2003). Although the Supreme Court has not determined the scope of any associational rights retained by prisoners, it has also "not [held] . . . that any right to intimate association is altogether terminated by incarceration." *See id.* However, "freedom of association is among the rights least compatible with incarceration." *Id.* Ultimately, *Overton* expressly declined "to explore or define the asserted right of association at any length or determine the extent to which it survives incarceration." *Id.*

Because the Supreme Court has not definitively spoken on this issue, this court must look

Amended Order Granting In Part and Denying in Part Defendant's Motion for Summary Judgment; Appointing Counsel; Referring Case to Settlement Proceedings

1  to existing Ninth Circuit law.  In *United States v. Wolf Child*, 699 F.3d 1082, 1095 (9th Cir.

2  2012), the Ninth Circuit analyzed the issue of whether a special condition of supervised release

3  which included a prohibition from dating or socializing with the defendant's "life partner"

4  implicated defendant's liberty interest in intimate association.  *Id.*  The Court determined that a

5  romantic relationship with one's "life partner implicates a particularly significant liberty interest

6  in intimate association."  *Id.*  However, *Wolf Child* was decided after defendant's challenged

7  action of sending Ms. Alvidrez's letter to Ms. Chavez.

8          Moreover, this court has not found any Ninth Circuit case law discussing the types of

9  relationships to which the right of intimate association extends for inmates.  The few Ninth

10  Circuit cases discussing whether a fiancé relationship is included within the right to intimate

11  association involve non-prisoners and are unpublished.  *See, e.g.*, *Wittman v. Saenz*, No. 02-

12  17252, 108 Fed. Appx. 548, 549-50 (9th Cir. 2004) (unpublished memorandum disposition)

13  (concluding that "the First Amendment right of association extends to individuals involved in an

14  intimate relationship, such as fiancés."); *Bevelhymer v. Clark County*, No. 94-15203, 1995 WL

15  242320, *3 (9th Cir. 1995) (unpublished memorandum disposition) (recognizing that the

16  Fourteenth Amendment protects intimate association between unmarried couples).  However,

17  unpublished memorandum dispositions are not sufficient to demonstrate "clearly established"

18  law.  *Cf. Wilson v. Layne*, 526 U.S. 603, 616 (1999) (finding no clearly established law where

19  the only cases cited were a state intermediate court decision and two unpublished district court

20  decisions).

21          In addition, other circuits have not been consistent in determining the boundaries of

22  "intimate association" relationships, and even then, those cases have not involved prisoners'

23  rights.  *See, e.g.*, *Matusick v. Erie County Water Authority*, 757 F.3d 31, 55-62 (2d Cir. 2014)

24  (granting qualified immunity after finding that a relationship with a fiancé was not clearly

25  established to be protected under the right of intimate association); *Poirier v. Massachusetts

26  Dept. of Corr.*, 558 F.3d 92, 96 (1st Cir. 2009) ("The unmarried cohabitation of adults does not

27  fall under any of the Supreme Court's bright-line categories for fundamental rights in this area,

28  and we decline to expand upon that list to include the type of relationship alleged here") (citation

Amended Order Granting In Part and Denying in Part Defendant's Motion for Summary Judgment; Appointing
Counsel; Referring Case to Settlement Proceedings

omitted).

In light of the dearth of evidence defining the contours of relationships protected by the right of intimate association within a prison context, the court must find that the question of whether a prisoner's non-exclusive relationship with his fiancé is protected under the right of intimate association was not clearly established such that a reasonable prison guard would know that defendant's actions were unlawful in this situation.

Accordingly, defendant is entitled to qualified immunity.

Alternatively, even assuming that the law is clearly established that plaintiff's relationship with Ms. Chavez is protected under the right to intimate association, defendant is also entitled to summary judgment on the merits. In order to implicate a fundamental right, such as the right to intimate association, plaintiff must demonstrate that defendant's action directly and substantially impaired that right. *See Parsons v. Del Norte County*, 728 F.2d 1234, 1237 (9th Cir. 1984) (per curiam). In *Parsons*, the Ninth Circuit explained that determination of whether a fundamental right was violated is triggered if the right was substantially burdened. *Id.* (*citing Zablocki v. Redhail,* 434 U.S. 374, 386 (1978)); *cf. Beecham v. Henderson Cnty.*, 422 F.3d 372, 376 (6th Cir. 2005) ("Government action is deemed to have direct and substantial burdens on intimate association only where a large portion of those affected by the rule are absolutely or largely prevented from [forming intimate associations], or where those affected by the rule are absolutely or largely prevented from [forming intimate associations] with a large portion of the otherwise eligible population of [people with whom they could form intimate associations].") (citation and internal quotation marks omitted).

Here, defendant's act of sending the letter for Ms. Alvidrez to Ms. Chavez did not absolutely or largely prevent plaintiff from choosing to associate with Ms. Chavez, nor did it impede upon plaintiff's right to freely associate with Ms. Chavez. *See, e.g.*, *Lyng v. International Union, United Auto., Aerospace and Agric. Implement Workers*, 485 U.S. 360 (1988) (challenged statute did not directly or substantially interfere with right to association because it did not order or prevent families from dining together); *Loving v. Virginia*, 388 U.S. 1 (1967) (complete ban on interracial marriages was a direct and substantial interference with

Amended Order Granting In Part and Denying in Part Defendant's Motion for Summary Judgment; Appointing Counsel; Referring Case to Settlement Proceedings

fundamental right to marry).  Defendant's action informed Ms. Chavez that plaintiff was romantically involved with another woman, and though defendant's act certainly resulted in creating discord in plaintiff's relationship with Ms. Chavez, there is no evidence that defendant's actions prevented, prohibited, or otherwise substantially burdened plaintiff from continuing to associate with Ms. Chavez.  *See Parsons*, 728 F.3d at 1237.  Thus, defendant's action did not implicate plaintiff's fundamental right of intimate association with Ms. Chavez.

Defendant's motion for summary judgment on this claim is GRANTED on the merits and on the basis of qualified immunity.

C.     Right to Familial Relations

To the extent plaintiff is claiming that defendant's actions violated plaintiff's right to familial relations, the court finds that defendant is entitled to judgment as a matter of law. Historically, the Supreme Court's family and parental-rights holdings have involved biological families.  *Smith v. Organization of Foster Families for Equality and Reform*, 431 U.S. 816, 842-43 (1977).  Plaintiff does not argue, and the court cannot find, situations in which this right extends to a relationship between two non-biological parties – plaintiff and Ms. Chavez – outside of foster-parents and adoptive children.  *See id.* at 843.  Accordingly, defendant's motion for summary judgment is GRANTED on this claim.

D.     Right to Marry

Plaintiff asserts that defendant's conduct in purposely sending Ms. Chavez a letter for Ms. Alvidrez constituted unjustified governmental interference in the decisions relating to marrying Ms. Chavez.  Plaintiff further claims that it caused him extreme emotional distress when Ms. Chavez received the letter intended for Ms. Alvidrez.  Further, Ms. Chavez expressed her shock and displeasure to plaintiff, and informed him that she would no longer marry him. Defendant argues that because plaintiff and Ms. Chavez are still on apparently good terms, and defendant's conduct did not actually restrict plaintiff's choice to marry, defendant is entitled to judgment as a matter of law.  Alternatively, defendant argues that he is entitled to qualified immunity.

The Supreme Court has ruled that the right to marry is part of the fundamental "right of

privacy" implicit in the Fourteenth Amendment's Due Process Clause. *Zablocki v. Redhail*, 434 U.S. 374, 384 (1978). "While the outer limits of [the right of personal privacy] have not been marked by the Court, it is clear that among the decisions that an individual may make without unjustified government interference are personal decisions 'relating to marriage. . . .'" *Id.* at 385. The fundamental right to marry, although subject to substantial restrictions, survive in a prison context. *Turner v. Safley*, 482 U.S. 78, 95-96 (1987).

Here, plaintiff asserts that defendant's action caused Ms. Chavez to call off the marriage and that defendant's purposeful action caused great strife in plaintiff's relationship with Ms. Chavez. Again, however, there is an absence of evidence that defendant's action substantially burdened plaintiff's freedom to marry. *See Parsons*, 728 F.2d at 1237. The Supreme Court has given two examples of what constitutes a "substantial burden" on fundamental rights such as the right to marry. First, in *Loving*, the Supreme Court determined that the challenged statute at issue placed a substantial burden on the right of marriage because it absolutely prohibited interracial marriage. *Loving v. Virginia*, 388 U.S. 1 (1967). Second, in *Zablocki*, the challenged statue substantially burdened the right of marriage because it forbade noncustodial parents with child support obligations from marrying without first obtaining court permission. *Zablocki*, 434 U.S. at 384. The Supreme Court also intimated that conduct less than "a direct legal obstacle" to an individual's choice to marry did not trigger a fundamental right. *See id.* at 387 n.12.

Here, because plaintiff was not prevented or prohibited from marrying Ms. Chavez, defendant's conduct did not implicate plaintiff's fundamental right to marriage. *See Zablocki*, 434 U.S. at 384; *Parsons*, 728 F.3d at 1237 (recognizing that a state action does not implicate a fundamental right to marriage merely because it somehow touches upon the incidents of marriage; rather, it must substantially burden the right). In plaintiff's own words, Ms. Chavez "called off" any marriage to plaintiff because she learned about plaintiff's relationship with Ms. Alvidrez. While defendant's action may have been the impetus for Ms. Chavez's decision to not marry plaintiff, it was not a state action that restricted plaintiff from his freedom of choice to marry Ms. Chavez. *Cf. Cleveland Board of Education v. LaFleur*, 414 U.S. 632, 639-40 (1974) ("This Court has long recognized that freedom of personal choice in matters of marriage and

Amended Order Granting In Part and Denying in Part Defendant's Motion for Summary Judgment; Appointing Counsel; Referring Case to Settlement Proceedings

24

family life is one of the liberties protected by the Due Process Clause of the Fourteenth

Amendment.").

Here, there is an absence of evidence that defendant's conduct prohibited plaintiff from

getting married.  Nor is there evidence that defendant's actions prevented plaintiff from marrying

Ms. Chavez.  That the letter caused Ms. Chavez heartache and influenced her decision to call off

any marriage to plaintiff is undisputed.  However, defendant's action of pointing out plaintiff's

infidelity was not an act that directly or "substantially interfered" with plaintiff's right to marry

such that plaintiff's fundamental right to marry was implicated.  *Compare Loving*, 388 U.S. 1

(1967) (a total ban on marriage outside one's ethnic group is a direct and substantial

interference) *with Califano v. Jobst*, 434 U.S. 47, 58 (1977) (termination of Social Security

benefits for a disabled dependent child who marries someone ineligible for benefits is not direct

or substantial interference).  *Cf. Akers v. McGinnis*, 352 F.3d 1030, 1040 (6th Cir. 2003) ("we

will find direct and substantial burdens only where a large portion of those affected by the rule

are absolutely or largely prevented from marrying, or where those affected by the rule are

absolutely or largely prevented from marrying a large portion of the otherwise eligible

population of spouses.") (internal quotation marks omitted).

Alternatively, defendant is entitled to qualified immunity on this claim.  The law is

clearly established that inmates have a right to marry.  *Turner*, 482 U.S. at 95-96.  The law is

also clearly established that in order to implicate the fundamental right to marry, a state actor or

regulation must directly and substantially burden that right.  Here, because defendant's conduct

did not restrict or prevent plaintiff's freedom of choice to marry Ms. Chavez, a reasonable officer

in defendant's position would not have known that his conduct would violate the fundamental

right to marry.

Accordingly, defendant is entitled to summary judgment on this claim.

E.    Conspiracy

Plaintiff asserts that defendant came to a "meeting of the minds" with co-defendants D.

Barneburg, Pimental, and Brandon by engaging in a pattern of retaliation and harassment.  (Opp.

at 57.)  Specifically, plaintiff claims that defendant conspired with Pimental and Brandon to stop

an incoming letter from Lorie Quiroz in retaliation for plaintiff's protected conduct.  Plaintiff also claims that defendant conspired with D. Barneburg and Coulter to issue a false RVR in retaliation for plaintiff's protected conduct.  (Third Am. Compl. ¶ 85.)

A civil conspiracy is a combination of two or more persons who, by some concerted action, intend to accomplish some unlawful objective for the purpose of harming another which results in damage.  *Gilbrook v. City of Westminster*, 177 F.3d 839, 856 (9th Cir. 1999).  To prove a civil conspiracy, the plaintiff must show that the conspiring parties reached a unity of purpose or common design and understanding, or a meeting of the minds in an unlawful agreement.  *Id.* To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy.  *Id.*  A defendant's knowledge of and participation in a conspiracy may be inferred from circumstantial evidence and from evidence of the defendant's actions.  *Id.* at 856-57.

Conclusory allegations of conspiracy are not enough to support a § 1983 conspiracy claim.  *Burns v. County of King*, 883 F.2d 819, 821 (9th Cir. 1989) (per curiam).  Although an "agreement or meeting of minds to violate [the plaintiff's] constitutional rights must be shown," *Woodrum v. Woodward County*, 866 F.2d 1121, 1126 (9th Cir. 1989), "[d]irect evidence of improper motive or an agreement to violate a plaintiff's constitutional rights will only rarely be available.  Instead, it will almost always be necessary to infer such agreements from circumstantial evidence or the existence of joint action."  *Mendocino Environmental Center v. Mendocino County*, 192 F.3d 1283, 1302 (9th Cir. 1999). Thus, "an agreement need not be overt, and may be inferred on the basis of circumstantial evidence such as the actions of the defendants."  *Id.* at 1301.

Plaintiff concedes that he does not have firsthand knowledge of an agreement among the defendants.  (Opp. at 57.)  Moreover, because the court has found that there is no underlying constitutional violation for plaintiff's claims of retaliation regarding: (1) the "sham investigation" into the stopping of plaintiff's letter from Lorie Quiroz; (2) the loss of plaintiff's drawing; and (3) the loss of stationary intended for plaintiff from Ms. Alvidrez, plaintiff's conspiracy allegations as to these claims necessarily fail.  As the Ninth Circuit has held,

1    "[c]onspiracy is not itself a constitutional tort under § 1983," and it "does not enlarge the nature

2    of the claims asserted by the plaintiff, as there must always be an underlying constitutional

3    violation." *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 935 (9th Cir. 2012) (en banc). The court's

4    finding that there is no constitutional violation for these claims therefore necessarily means that

5    there is no viable claim for conspiracy.

6        Plaintiff next alleges that defendant conspired to retaliate and prevent plaintiff from

7    marrying and associating with Ms. Chavez when defendant purposely sent a letter for Ms.

8    Alvidrez to Ms. Chavez. (Third. Am. Compl. ¶ 76.) However, plaintiff does not specifically

9    name any individual with whom defendant conspired. (*Id.*) Thus, there is an absence of

10   evidence regarding a meeting of the minds or any agreement.

11       Plaintiff also claims that defendant conspired with D. Barneburg and Coulter in issuing

12   the RVR in retaliation for plaintiff's protected conduct. Viewing the evidence in the light most

13   favorable to plaintiff, based on the inference that defendant harbored a retaliatory motive and the

14   absence of a legitimate penological objective, the court finds that there is a reasonable inference

15   that defendant, D. Barneburg, and Coulter reached an agreement to retaliate against plaintiff.

16   Moreover, the evidence suggests that the act of issuing the RVR and finding plaintiff guilty were

17   "unlikely to have [occurred] without an agreement." *Mendocino Environmental Center*, 192

18   F.3d at 1302. Thus, the court finds that there is a possibility that the jury can infer from the

19   circumstances that the alleged conspirators agreed to achieve the conspiracy's objectives.

20       Accordingly, defendant's motion for summary judgment on the conspiracy claim, with

21   the exception of plaintiff's conspiracy claim concerning the issuance of the RVR, is GRANTED.

22       F.    State law claims

23       Plaintiff raises a variety of state law claims. As an initial matter, defendant asserts that

24   plaintiff did not comply with the Tort Claims Act because plaintiff failed to submit his federal

25   civil rights complaint within six months of the denial of the state's rejection of plaintiff's claim.

26   Here, plaintiff's state claims were rejected on June 17, 2010, and notice of the rejection was

27   mailed to plaintiff on June 24, 2010. The parties agree that plaintiff's federal civil rights

28   complaint was due to be mailed no later than December 24, 2010. Plaintiff declares that he

1    mailed his federal civil rights complaint by turning it in to Officer Reich for mailing on

2    December 23, 2010.  (Opp. at 60.)  Thus, the court finds that plaintiff has complied with the

3    California Tort Claims Act.

4           In plaintiff's third amended complaint, he alleges "violation of state law - mandatory

5    duties" and proceeds to list a variety of state law claims.  To the extent defendant argues that he

6    is not liable for any state law violations because "mandatory duty liability derives from the

7    Government Code" (MSJ at 30), defendant reads plaintiff's cause of action too narrowly.  *See*

8    *Morris v. County of Marin*, 18 Cal.3d 901, 924-25 (1977) (Clark, J., concurring) (discussing the

9    difference between "mandatory" and "discretionary" acts for public entities, and contrasting the

10   liability with public employees, which were made to be liable similarly to private persons).

11   Liberally construed, the court does not interpret plaintiff's allegation that defendant violated

12   "state law - mandatory duties" to be limited only to the California Govt. Code sections,

13   especially because plaintiff explicitly alleges that defendant is liable also for violations of the

14   California Penal Code, California Civil Code, California Civil Procedure, and Title 15 of the

15   California Code of Regulations.  Accordingly, the court will not limit plaintiff's state law claims

16   to the California Govt. Code.

17          Plaintiff first alleges that defendant violated California Penal Code §§ 2600 and 2601.

18   Defendant argues that the authority to bring criminal proceedings pursuant to the Penal Code is

19   vested solely in the public prosecutor.  However, in *Gerber v. Hickman*, 291 F.3d 617, 623 (9th

20   Cir. 2002), the Ninth Circuit implied that California Penal Code §§ 2600 and 2601 allow for a

21   private right of action as those sections grant a statutory right that "persons sentenced to

22   imprisonment in state prison may during that period of confinement be deprived of such rights . .

23   . reasonably related to legitimate penological interests."  *Id.*  California courts have also

24   permitted civil lawsuits alleging the violation of Section 2600.  *See, e.g.*, *Thompson v. Dept. of*

25   *Corrections*, 25 Cal.4th 117, 121 (2001); *De Lancie v. Superior Court*, 31 Cal.3d 865 (1982)

26   (prior to the statutes' amendment in 1994[7], California recognized that Penal Code §§ 2600 and

27   ―――――――――――――――

28        [7]  The section previously stated: "[a] person sentenced to imprisonment in a state prison may,
     during any such period of confinement, be deprived of such rights, and only such rights, as is
     Amended Order Granting In Part and Denying in Part Defendant's Motion for Summary Judgment; Appointing
     Counsel; Referring Case to Settlement Proceedings

1  2601 accorded prison inmates a statutory right to privacy in prisons and jails).  Accordingly,

2  defendant is not entitled to summary judgment as to plaintiff's Penal Code claims.

3      Defendant does not argue that he is not liable for plaintiff's state law claims arising out of

4  the California Civil Code or Civil Procedure.  In fact, with regard to the state law claims,

5  defendant only specifically challenges plaintiff's assertion of liability under the California Govt.

6  Code by arguing that the Govt. Code applies only to pubic entities.  However, only three of the

7  four California Govt. Code sections cited by plaintiff refer specifically to public entities:

8  California Govt. Code §§ 815.2, 815.6, and 844.6.  On the other hand, California Govt. Code §

9  820 refers to the liability of public employees, and specifically provides, "a public employee is

10 liable for injury caused by his act or omission to the same extent as a private person."

11 Accordingly, defendant's motion for summary judgment is granted as to California Govt. Code

12 §§ 815.2, 815.6, and 844.6, and denied as to California Govt. Code § 820.

13     Because defendant makes no argument regarding the California Civil Code §§ 52.1, 52.3,

14 and 1708 and California Civil Procedure § 527.6, these causes of action survive the motion for

15 summary judgment.

16     Plaintiff alleges that defendant violated numerous sections of Title 15 of the California

17 Code of Regulations. The existence of regulations such as these governing the conduct of prison

18 employees does not necessarily entitle plaintiff to sue civilly to enforce the regulations or to sue

19 for damages based on their violation. The court has found no authority to support a finding that

20 there is an implied private right of action under Title 15 of the California Code of Regulations,

21 and plaintiff has provided none.  Given that the statutory language does not support an inference

22 that there is a private right of action, the court finds that plaintiff is unable to state any

23 cognizable claims upon which relief may be granted based on the violation of Title 15 of the

24 California Code of Regulations.  *See e.g.*, *Vasquez v. Tate*, No. 10-cv-1876 JLT (PC), 2012 WL

25 6738167, at *9 (E.D. Cal. Dec. 28, 2012); *Davis v. Powell*, 901 F. Supp. 2d 1196, 1211 (S.D.

26 Cal. Oct. 4, 2012).  Accordingly, defendant is entitled to summary judgment on plaintiff's claims

27

28 necessary in order to provide for the reasonable security of the institution in which he is confined
and for the reasonable protection of the public."  *De Lancie*, 31 Cal.3d at 869.

Amended Order Granting In Part and Denying in Part Defendant's Motion for Summary Judgment; Appointing
Counsel; Referring Case to Settlement Proceedings

29

1  of violations of Title 15 of the California Code of Regulations.

2  III.    Referral to Magistrate Judge Settlement Conference and Appointment of Counsel

3          The court finds good cause to refer this matter to Magistrate Judge Nathanael Cousins for

4  settlement proceedings.  The proceedings will consist of one or more conferences as determined

5  by Judge Cousins.  If these settlement proceedings do not resolve this case, the court will then

6  set this matter for trial.

7          The court finds that exceptional circumstances, including plaintiff's ability to articulate

8  his claims in light of the complexity of the issues involved, warrants the appointment of pro bono

9  counsel to represent plaintiff during the settlement proceedings and for trial.

10                                         **CONCLUSION**

11         1.      Defendant's motion for summary judgment is DENIED in part and GRANTED in

12  part.  Summary judgment is DENIED as to plaintiff's claims of: (1) retaliation regarding sending

13  plaintiff's letter for Ms. Alvidrez to Ms. Chavez; (2) retaliation and conspiracy to retaliate

14  regarding the issuance of the RVR; (3) California Penal Code §§ 2600 and 2601; (4) California

15  Govt Code § 820; (5) California Civil Code §§ 52.1, 52.3, and 1708; and (6) California Civil

16  Procedure § 527.6.  Summary judgment is GRANTED as to plaintiff's claims of: (1) retaliation

17  regarding the sham investigation of Ms. Quiroz's letter; (2) retaliation regarding the lost drawing

18  to Lisa Gallegos; (3) retaliation regarding the lost stationary from Ms. Alvidrez; (4) a violation

19  of plaintiff's right to intimate association; (5) a violation of plaintiff's right to familial

20  association; (6) a violation of plaintiff's right to marry; (7) conspiracy, except for the conspiracy

21  regarding the RVR; (8) California Govt. Code §§ 815.2, 815.6, and 844.6; and (9) Title 15 of the

22  California Code of Regulations.

23         2.      This matter is referred to the Federal Pro Bono Project to find counsel.  Upon an

24  attorney being located to represent plaintiff, that attorney shall be appointed as counsel for

25  plaintiff in this matter including for purposes of the settlement conference(s) with Judge Cousins

26  and trial.

27         3.      The instant case is REFERRED to Judge Cousins for settlement proceedings on

28  the remaining claims in this action, as described above, within **ninety (90) days** of the date

Amended Order Granting In Part and Denying in Part Defendant's Motion for Summary Judgment; Appointing
Counsel; Referring Case to Settlement Proceedings

1  counsel is located and appointed for plaintiff.  Judge Cousins shall coordinate a time and date for

2  a settlement conference with all interested parties or their representatives.  If these settlement

3  proceedings do not resolve this matter, the court will set this matter for trial.

4          4.      The instant case is STAYED pending the result of the settlement conference

5  proceedings.  The clerk shall ADMINISTRATIVELY CLOSE this case file until further order of

6  the court.

7          IT IS SO ORDERED.

8  DATED:   March 31, 2015                                    _____

                                                             LUCY H. KOH
9                                                            United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Amended Order Granting In Part and Denying in Part Defendant's Motion for Summary Judgment; Appointing
Counsel; Referring Case to Settlement Proceedings