IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| MARK ROBERT QUIROZ, | ) | No. C 11-0016 LHK (PR) |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING IN PART |
| | ) | AND DENYING IN PART |
| v. | ) | DEFENDANT'S MOTION FOR |
| | ) | SUMMARY JUDGMENT; |
| | ) | REFERRING CASE TO |
| ROBERT A. HOREL, et al., | ) | SETTLEMENT PROCEEDINGS |
| | ) | |
| Defendants. | ) | (Docket Nos. 267, 291) |
| | ) | |

Plaintiff, a state prisoner proceeding *pro se*, filed a third amended complaint under 42 U.S.C. § 1983, arguing that prison official defendants violated his federal and state law rights. Defendants have filed a motion for summary judgment.[1] Defendants have also filed a supplemental brief. (Docket No. 290.) Plaintiff has filed an opposition.[2] Defendants have filed a reply. Having carefully considered the papers submitted, the court GRANTS in part and DENIES in part defendants' motion for summary judgment.[3]

---

[1] Defendant Short has filed a separate motion for summary judgment, which has been addressed in a separate order.

[2] Plaintiff's motion for leave to exceed the page limit is GRANTED. (Docket No. 291.)

[3] For the claims upon which the court grants summary judgment on the merits, it will not address defendants' additional argument that they are entitled to qualified immunity.

**BACKGROUND**

In the third amended complaint, plaintiff alleges that defendants are Institutional Gang Investigators ("IGI") of the Investigative Services Unit ("ISU") at Pelican Bay State Prison ("PBSP").  The IGI officers are often tasked with inspecting incoming and outgoing mail.  Plaintiff complains that defendants conspired with each other and retaliated against plaintiff for exercising his First Amendment right to file grievances and lawsuits.  Specifically, plaintiff alleges that defendants: (1) violated plaintiff's First Amendment right to be free from retaliation; (2) conspired with other defendants to violate plaintiff's constitutional rights; and (3) violated state law.[4]  In response, defendants argue that: (1) a portion of the claims are unexhausted; (2) a portion of the claims are barred by the statute of limitations; and (3) defendants are otherwise entitled to summary judgment on the merits, and based on qualified immunity.[5]

The following facts are taken in the light most favorable to plaintiff.

Plaintiff has been confined in PBSP's Secure Housing Unit ("SHU") since February 1992.  (Third Am. Compl. ¶ 23.)  Since 1991, plaintiff has been an active, validated member of the Mexican Mafia prison gang.  (Countess Decl. ¶ 7.)  The Mexican Mafia prison gang is responsible for a variety of illegal activity within PBSP and other prisons, and is considered a continuing security threat within the California prison system.  (*Id.* ¶ 6.)  The Mexican Mafia is also affiliated with other prison gangs and street gangs, and promotes violence as a way of resisting prison officials' authority within prisons.  (*Id.*)

On July 19, 2005, plaintiff filed a federal civil rights complaint in *Quiroz v. Woodford*,

---

[4]  In the third amended complaint, plaintiff also alleged that IGI Correctional Officer Countess violated plaintiff's constitutional right to marry, right to familial relationships, and right to association.  However, in plaintiff's opposition, plaintiff states that he is voluntarily dismissing those claims against Countess.  (Opp. at 4.)  Thus, pursuant to Federal Rule of Civil Procedure 41(a)(2), plaintiff's claims against Countess regarding the right to marry, right to familial relationships, and right to association are DISMISSED without prejudice.

[5]  Defendants also raised an argument that one of plaintiff's retaliation claims was barred by *Heck v. Humphrey*, 512 U.S. 477 (1994).  Defendants have now withdrawn that argument.  (Reply at 1 n.3.)

Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment; Referring Case to Settlement Proceedings

1    No. 05-2938 JF (N.D. Cal.) ("*Quiroz I*").  (Third Am. Compl. ¶ 26.)  From 2006 through April

2    2012, plaintiff filed 59 administrative grievances against IGI officers alleging a variety of

3    offenses.  (Opp. at 37.)  In 2007, plaintiff also participated in a staff complaint filed by another

4    inmate named Sandoval against IGI officers.  (Third Am. Compl. ¶ 38.)  In 2009, plaintiff

5    submitted a declaration in support of Sandoval in a federal civil rights complaint against IGI

6    officers for excessive force in *Sandoval v. Barneburg*, No. 08-865 JSW (N.D. Cal. filed Feb. 8,

7    2008) ("*Sandoval*").  (Third Am. Compl. ¶¶ 38, 61.)  Plaintiff's underlying federal civil rights

8    complaint claims that defendants, who are all PBSP prison officials, retaliated against him for

9    filing *Quiroz I*, participating in Sandoval's staff complaint, submitting a declaration in support of

10   *Sandoval*, and filing administrative grievances against IGI officers.

11          The court will set forth more specific facts giving rise to each of plaintiff's claims below.

## ANALYSIS

13   I.    <u>Standard of Review</u>

14          Summary judgment is proper where the pleadings, discovery and affidavits demonstrate

15   that there is "no genuine issue as to any material fact and that the moving party is entitled to

16   judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Material facts are those which may affect

17   the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute

18   as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a

19   verdict for the nonmoving party.  *Id.*

20          The party moving for summary judgment bears the initial burden of identifying those

21   portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine

22   issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Where the moving

23   party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no

24   reasonable trier of fact could find other than for the moving party.  But on an issue for which the

25   opposing party will have the burden of proof at trial, as is the case here, the moving party need

26   only point out "that there is an absence of evidence to support the nonmoving party's case."  *Id.*

27   at 325.

28          Once the moving party meets its initial burden, the nonmoving party must go beyond the

Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment; Referring Case to
Settlement Proceedings

1  pleadings, and by its own affidavits or discovery, "set forth specific facts showing that there is a

2  genuine issue for trial." Fed. R. Civ. P. 56(e).  The court is only concerned with disputes over

3  material facts, and "factual disputes that are irrelevant or unnecessary will not be counted."

4  *Liberty Lobby, Inc.*, 477 U.S. at 248.  It is not the task of the court to scour the record in search

5  of a genuine issue of triable fact. *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996).  The

6  nonmoving party has the burden of identifying, with reasonable particularity, the evidence that

7  precludes summary judgment. *Id.*  If the nonmoving party fails to make this showing, "the

8  moving party is entitled to judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 323.

9      At the summary judgment stage, the court must view the evidence in the light most

10  favorable to the nonmoving party: if evidence produced by the moving party conflicts with

11  evidence produced by the nonmoving party, the judge must assume the truth of the evidence set

12  forth by the nonmoving party with respect to that fact. *See Leslie v. Grupo ICA*, 198 F.3d 1152,

13  1158 (9th Cir. 1999).

14  II.  <u>Exhaustion</u>

15      Defendants argue that plaintiff failed to exhaust his claims that defendants IGI

16  Correctional Officer Countess, ISU Captain Brandon, and ISU Captain McGuyer retaliated

17  against plaintiff by stopping incoming mail to plaintiff on February 20, 2007 and September 20,

18  2007, and John Doe III retaliated against plaintiff by intentionally discarding a piece of

19  plaintiff's outgoing mail in November 2007.[6]  (MSJ at 14.)  Plaintiff's third amended complaint

20  is silent regarding whether plaintiff attempted to exhaust these claims.[7]

21

22  _____

23    [6] Defendants argue that plaintiff failed to exhaust his claim that an unknown IGI officer retaliated against plaintiff by discarding plaintiff's outgoing mail in November 2007.  (Third

24  Am. Compl. ¶ 42.)  However, plaintiff merely alleges that "John Doe III" discarded the mail.  It does not appear that plaintiff has included this allegation within his "causes of action."

25  Specifically, plaintiff's claim of retaliation names many defendants, but does not include "John Doe III."  Nonetheless, out of an abundance of caution, the court will assume that plaintiff

26  intended to include this claim in his third amended complaint.

27    [7] Defendants argue that plaintiff's claim that Appeals Coordinator Wilber retaliated against plaintiff by improperly processing plaintiff's grievance on May 20, 2008, is unexhausted.  (MSJ

28  at 16.)  However, defendants have now withdrawn this argument.  (Reply at 2, n.5.)

Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment; Referring Case to Settlement Proceedings

1   The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought
2   with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a
3   prisoner confined in any jail, prison, or other correctional facility until such administrative
4   remedies as are available are exhausted."  28 U.S.C. § 1997e(a).  Nonexhaustion under
5   § 1997e(a) is an affirmative defense; that is, defendants have the burden of raising and proving
6   the absence of exhaustion.  *See Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (en banc).

7   Defendants state that the prison has no record that plaintiff initiated the grievance process
8   regarding the February 20, 2007 or September 20, 2007 stopping of mail, or the November 2007
9   discarding of plaintiff's outgoing mail.  Plaintiff concedes that he failed to file any grievances
10  exhausting the above three claims.  (Opp. at 9.)  Because the undisputed evidence, viewed in the
11  light most favorable to plaintiff, shows that plaintiff failed to exhaust these claims, defendants
12  are entitled to summary judgment on plaintiff's claims that defendants retaliated against him by
13  stopping plaintiff's mail on February 20, 2007, September 20, 2007, and discarding a piece of
14  outgoing mail in November 2007.  *See id.*

15  III.   Statute of Limitations

16  Defendants argue that plaintiff's claims regarding events that occurred prior to 2007 are
17  barred by the statute of limitations.  (MSJ 17-19.)  Specifically, defendants assert that the
18  following claims are untimely: (1) IGI Lieutenant D. Barneburg, Correctional Counselor
19  Hernandez, and non-defendant Marquez impermissibly confiscated plaintiff's personal property
20  in 2004 (Third Am. Compl. ¶ 24); (2) McGuyer and Countess interfered with plaintiff's ability to
21  send and receive mail in October, November, and December 2006 (*id.* ¶¶ 27-35); and (3)
22  McGuyer and Wilber mishandled an administrative grievance in October and November 2006
23  (*id.* ¶¶ 8-9, 29-30, 32).  Plaintiff responds that the impermissible confiscation of his personal
24  property in 2004 was not intended to be a claim.  (Opp. at 13.)  Plaintiff further states that he is
25  voluntarily dismissing the claims that McGuyer and Countess interfered with plaintiff's ability to
26  send and receive mail in October, November, and December 2006, and that McGuyer and Wilber
27  mishandled an administrative grievance in October and November 2006.

28  Accordingly, these claims are DISMISSED without prejudice.

Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment; Referring Case to
Settlement Proceedings

IV.   <u>Merits</u>

    A.   <u>Retaliation</u>

Plaintiff alleges that defendants retaliated against him in the following ways for exercising plaintiff's First Amendment rights: (1) by stopping plaintiff's incoming and outgoing letters; (2) by delaying plaintiff's incoming mail; (3) by withholding prisoner declarations; (4) by issuing a Rules Violation Report ("RVR") against plaintiff; (5) by failing to provide plaintiff notice that a Superior Court would be seizing his funds; and (6) by searching plaintiff's cell and removing paperwork.  The court will address each incident in turn.

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements:  (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted).

The prisoner must show that the type of activity in which he was engaged was constitutionally protected, that the protected conduct was a substantial or motivating factor for the alleged retaliatory action, and that the retaliatory action advanced no legitimate penological interest. *Hines v. Gomez*, 108 F.3d 265, 267-68 (9th Cir. 1997) (inferring retaliatory motive from circumstantial evidence).  Retaliatory motive may be shown by the timing of the allegedly-retaliatory act and other circumstantial evidence, as well as direct evidence. *Bruce v. Ylst*, 351 F.3d 1283, 1288-89 (9th Cir. 2003).  However, mere speculation that defendants acted out of retaliation is not sufficient. *Wood v. Yordy*, 753 F.3d 899, 904 (9th Cir. 2014) (citing cases) (affirming grant of summary judgment where there was no evidence that defendants knew about plaintiff's prior lawsuit, or that defendants' disparaging remarks were made in reference to prior lawsuit).

    1.   <u>Stopping incoming and outgoing letters</u>

Defendants argue that there is an absence of evidence of a causal connection that the stopping of plaintiff's incoming and outgoing letters was motivated because of plaintiff's

Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment; Referring Case to Settlement Proceedings

6

1  protected conduct.  Defendants further argue that there were legitimate reasons for disallowing

2  plaintiff's mail.  Plaintiff claims that defendants stopped these incoming and outgoing letters

3  because plaintiff filed *Quiroz I*, participated in Sandoval's staff complaint, submitted a

4  declaration in support of *Sandoval*, and filed administrative grievances.

5      To raise a triable issue as to motive, plaintiff must offer evidence that defendants knew

6  about the protected conduct.  *Corales v. Bennett*, 567 F.3d 554, 568 (9th Cir. 2009).  In addition,

7  plaintiff must show "either direct evidence of retaliatory motive or at least one of three general

8  types of circumstantial evidence [of that motive]."  *McCollum v. California Dept. of Corrections*

9  *and Rehabilitation*, 647 F.3d 870, 882 (9th Cir. 2011) (quoting *Allen v. Iranon*, 283 F.3d 1070,

10  1077 (9th Cir. 2002)).  To survive summary judgment without direct evidence, therefore,

11  plaintiff must "present circumstantial evidence of motive, which usually includes: (1) proximity

12  in time between protected speech and the alleged retaliation; (2) [that] the [defendant] expressed

13  opposition to the speech; [or] (3) other evidence that the reasons proffered by the [defendant] for

14  the adverse . . . action were false and pretextual."  *McCollum*, 647 F.3d at 882 (internal quotation

15  marks and citation omitted).

16                          A.    June 2008 incoming letter from Yvette Asahi

17      On June 9, 2008, Countess and Brandon stopped an incoming letter to plaintiff from

18  Yvette Asahi.  (Third Am. Compl. ¶ 54.)  The reason given for the confiscation was because the

19  letter was considered third party correspondence and used a fictitious name or address.  (*Id.*)

20  Plaintiff challenged the stop in an administrative grievance.  In the administrative grievance,

21  plaintiff explained that Ms. Asahi lived with her cousin, Vivian Chavez, and Ms. Chavez was

22  plaintiff's girlfriend.  In addition, plaintiff asserts that on May 30, 2008, Countess inserted a note

23  in a birthday card that Ms. Chavez sent to plaintiff, and the note stated "you are being advised

24  that any further correspondence that contains perfume such as this will be stopped and you will

25  not receive it.  Your assistance informing the author of the correspondence is to your benefit if

26  you wish to continue to correspond with her."  (*Id.*)  Plaintiff argued that corresponding with

27  people from the same residence was not in violation of any policy.  Warden Horel denied

28  plaintiff's administrative grievance.  (*Id.*)  Plaintiff claims that Countess and Brandon

1   confiscated the June 2008 incoming letter from Ms. Asahi because plaintiff filed *Quiroz I*,

2   participated in Sandoval's staff complaint, submitted a declaration in support of *Sandoval*, and

3   filed administrative grievances.

4        In response, Countess states that he stopped two pieces of incoming mail from "Y. Asahi

5   and Ruben and Yvette Asahi" which originated from Ms. Chavez's address. (Countess Decl. ¶

6   15.) Countess deemed the mail "third party correspondence" because the letters appeared to be

7   written by someone other than the person who wrote the envelope, one envelope was postmarked

8   three weeks after one of the letters was dated, and the two letters seemed to be written by two

9   different people. (*Id.*) Moreover, Ms. Chavez's address had been identified as a "drop box"

10  address for communications with plaintiff other than by Vivian Chavez. (*Id.*) Prison officials

11  prohibit third party correspondence to prevent inmate to inmate correspondence. (*Id.* ¶ 13.) The

12  IGI officers stop mail as third party correspondence if the envelope and the letter are obviously

13  written by different people. (*Id.*) The prison has a legitimate security interest in preventing such

14  correspondence, particularly gang member to prison gang member communication. (*Id.*)

15  Moreover, the use of "drop boxes" is an unauthorized practice where an inmate sends or receives

16  mail to an outside address where the mail can be routed from one inmate to another after persons

17  at that outside address repackage the original mail and send it back to the prison. (*Id.* ¶ 12.)

18  Because "drop boxes" facilitate inmate to inmate correspondence, mail to or from that address is

19  generally prohibited to ensure prison security. (*Id.*)

20        Plaintiff asserts that Countess stopped this letter, and Brandon approved the stop, because

21  plaintiff filed *Quiroz I*, participated in Sandoval's staff complaint, submitted a declaration in

22  support of *Sandoval*, and filed an administrative grievance on January 2, 2008, challenging

23  Countess' disallowance of incoming correspondence from an unidentified party (*id*. ¶ 45).[8]  (*Id.* ¶

24

25       [8] In plaintiff's opposition, he expands his claim by alleging that Countess retaliated against
26  him because plaintiff filed not only the January 2008 grievance regarding stopped mail, but also
    ten additional grievances against IGI/ISU officers. (Opp. at 21.)  However, plaintiff improperly
27  raises these theories for the first time in his opposition.  As such, these new allegations will not
    be considered.  *See Pickern v. Pier 1 Imports Inc.*, 457 F.3d 963, 968-69 (9th Cir. 2006)
28  (affirming a district court's refusal to consider at the summary judgment stage factual allegations
    not pled in the complaint); *Patel v. City of Long Beach*, No. 09-56699, 564 Fed. Appx. 881, 882

Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment; Referring Case to
Settlement Proceedings

8

54.)  However, plaintiff provides no non-speculative evidence of retaliatory motive.  *See McCollum*, 647 F.3d at 882.

First, there is no evidence that Countess or Brandon knew that plaintiff filed *Quiroz I*, participated in Sandoval's staff complaint, submitted a declaration in support of *Sandoval*, or filed administrative grievances.  Plaintiff alleges that he "put the defendants on notice that [] Countess was messing with his mail and was singling out [plaintiff] out of vindictiveness behind his lawsuit filed against the IGI [officers in *Quiroz I*]."  (Third Am. Compl. ¶ 54.)  However, Countess was not named as a defendant in *Quiroz I*, and there is no other plausible evidence that Countess knew about *Quiroz I*.  Plaintiff also alleges that Brandon knew about *Quiroz I*.  However, Brandon was also not named as a defendant in that lawsuit, and there is no other evidence to infer that Brandon otherwise was aware of it.  Plaintiff states that he gave Brandon "notice" that plaintiff began having "all of these problems" after plaintiff filed *Quiroz I*.  (Third Am. Compl. ¶ 54.)  However, there is an absence of evidence as to when plaintiff gave Brandon "notice," and specifically, whether plaintiff gave Brandon notice of *Quiroz I* prior to the June 9, 2008 stopping of Ms. Asahi's incoming letter.

In addition, even assuming that Countess and Brandon knew that plaintiff filed *Quiroz I*, participated in Sandoval's staff complaint, submitted a declaration in support of *Sandoval*, and filed administrative grievances, there is no proximity in time between plaintiff's filing of *Quiroz I* in 2005, plaintiff's participation in Sandoval's staff complaint in 2007, or any specific administrative grievance against which defendants allegedly retaliated.  *Quiroz I* was filed in 2005, approximately three years prior.  The 2007 Sandoval staff complaint also occurred over one year prior to this challenged stopping of mail on June 9, 2008.  *See Vasquez v. Cnty. of Los Angeles*, 349 F.3d 634, 646 (9th Cir. 2004) (recognizing that a thirteen month lapse is too long to support an inference of causality).  However, plaintiff's January 2008 administrative grievance which challenged Countess' disallowance of an incoming piece of mail to plaintiff from an unidentified party occurred close to six months prior to the confiscation of the underlying June 9,

_____

(9th Cir. March 19, 2014) (affirming district court's rejection of plaintiff's new theory, raised for the first time in opposition to summary judgment) (unpublished memorandum disposition).

Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment; Referring Case to Settlement Proceedings

9

1   2008 incoming letter from Ms. Asahi.  (Third Am. Compl. ¶ 45.)  Though six months may

2   support an inference of retaliation, *see Coszalter v. City of Salem*, 320 F.3d 968, 977 (9th Cir.

3   2003), it is usually insufficient by itself to support a finding of retaliatory motive, *see Pratt v.*

4   *Rowland*, 65 F.3d 802, 808 (9th Cir. 1995).  In order to establish a causal link sufficient to

5   survive summary judgment based solely on temporal proximity, the protected activity and the

6   adverse action must be "very close."  *Clark County School District v. Breeden*, 532 U.S. 268,

7   273-74 (2001) (per curiam) (citing cases finding periods of three and four months too long).

8         There is no evidence that Countess or Brandon expressed opposition to plaintiff's

9   protected conduct.  In addition, plaintiff offers no evidence that Countess' reasons for

10  concluding that the incoming mail was "third party correspondence" was false or pretextual.  *See*

11  *Wood*, 753 F.3d at 904-05 (speculation on defendant's motive is insufficient to defeat summary

12  judgment).  Plaintiff does not dispute that the letter qualified as "third party correspondence."

13  Outside of plaintiff's unsupported assertion that Countess and Brandon were motivated by

14  plaintiff's protected conduct, plaintiff has offered no non-speculative evidence to support his

15  claim that the disallowance of mail from Yvette Asahi was because plaintiff filed *Quiroz I*,

16  participated in Sandoval's staff complaint, submitted a declaration in support of *Sandoval*, or

17  filed an administrative grievance challenging a stopped mail six-months prior.  *See Wood v.*

18  *Yordy*, 753 F.3d 899, 904 (9th Cir. 2014) ("mere speculation that defendants acted out of

19  retaliation is not sufficient").

20        Moreover, it is clear that prisons have a legitimate penological interest in stopping prison

21  gang activity.  *See Bruce*, 351 F.3d at 1289.  Prison security is a legitimate and neutral

22  penological interest.  *See Stefanow v. McFadden*, 103 F.3d 1466, 1472 (1996) (recognizing

23  prison security as a legitimate and "compelling" penological interest and upholding

24  content-based confiscation of book advocating racism and violence).  Prison gangs in particular

25  are a threat to inmate and staff safety, as well as to prison order.  *See, e.g.*, *Wilkinson v. Austin*,

26  545 U.S. 209, 227 (2005).  The court must "afford appropriate deference and flexibility" to

27  prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged

28  to be retaliatory.  *See Pratt*, 65 F.3d at 807.  Countess asserts that he stopped the incoming mail

Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment; Referring Case to
Settlement Proceedings

1   because it violated the rule against third party correspondence, and the mail came from a "drop

2   box" address.  Both rules are in place to prohibit prison gang activity.

3          Although the Ninth Circuit has held that "prison officials may not defeat a retaliation

4   claim on summary judgment simply by articulating a general justification for a neutral process,"

5   *Bruce*, 351 F.3d at 1289, this is not a case like *Bruce* because here, there is an absence of

6   evidence that defendants had a retaliatory motive.  *See id.* (specifying that a general justification

7   for a neutral process cannot defeat a retaliation claim when there is also a genuine issue of

8   material fact as to retaliatory motive).  Accordingly, defendants are entitled to summary

9   judgment on this claim.

10                    B.      December 2008 incoming letter from Dawn Aguila

11         On December 10, 2008, Countess and Brandon disallowed an incoming letter to plaintiff

12  from Dawn Aguila.  (Third Am. Compl. ¶ 60.)  Plaintiff claims that Countess and Brandon

13  conspired and retaliated against him for filing *Quiroz I*, participating in Sandoval's staff

14  complaint, submitting a declaration in support of *Sandoval*, and filing administrative grievances

15  in January and July 2008.  (*Id.* ¶¶ 45, 54, 56, 57, 60.)  Plaintiff complains that the letter was

16  stopped on the basis that the correspondence promoted gang activities.  (*Id.* ¶ 60.)  However,

17  plaintiff asserts that Ms. Aguila is not a gang member, had no reason to promote gang activity,

18  and that Countess and Brandon misinterpreted the contents of the letter.  (*Id.*)

19         Countess averred that the letter from Ms. Aguila appeared to promote gang activities

20  because it seemed to advise plaintiff about current gang activities by using street slang and coded

21  terms, and appeared to seek direction from plaintiff.  (Countess Decl. ¶ 17; Nimrod Decl., Ex.

22  K.)  Also, Countess believed the mail was "third party correspondence" because the letter was

23  signed by a different person than the name on the envelope and the envelope was post-marked

24  more than a month after the letter was written.  (Countess Decl. ¶ 17; Nimrod Decl., Ex. K.)

25  Plaintiff does not respond to defendants' arguments in his opposition and does not dispute that

26  the mail satisfied the requirements to be labeled "third party correspondence."

27         Again here, there is no evidence of retaliatory motive.  *See McCollum*, 647 F.3d at 882.

28  First, plaintiff does not allege that Countess knew about plaintiff's protected conduct.  With

Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment; Referring Case to
Settlement Proceedings

1  respect to Brandon, plaintiff asserts that in the spring of 2008, Brandon and other IGI officers

2  were reading declarations that inmates had submitted in support of *Quiroz I*.  (Third Am. Compl.

3  ¶ 49.)  However, it is not clear how this would demonstrate that Brandon would have a

4  retaliatory motive.  In another instance, plaintiff alleges that Brandon approved of the stopping

5  of plaintiff's mail in June 2008.  (*Id.* ¶ 45.)  Plaintiff filed administrative grievances challenging

6  the stopping of his mail, but there is no evidence that Brandon was aware of those grievances.

7  Plaintiff also cites to specific paragraphs in his third amended complaint in an effort to show that

8  Countess and Brandon had notice of plaintiff's protected conduct.  (*Id.* ¶ 60.)  However, the

9  paragraphs to which plaintiff refers include no factual support demonstrating that Countess or

10  Brandon knew about plaintiff's protected conduct.  (*Id.*)

11       In addition, even assuming that Countess and Brandon knew about plaintiff's protected

12  conduct, as previously stated, there is no proximity in time between Countess and Brandon's

13  disallowance of Ms. Aguila's incoming letter to plaintiff on December 10, 2008 and plaintiff's

14  filing of *Quiroz I* in 2005, or plaintiff's participation in Sandoval's staff complaint in 2007.  *See*

15  *Vasquez*, 349 F.3d at 646.  Further, neither Countess nor Brandon were defendants in *Quiroz I*,

16  and the proximity in time between these events does not lead to an inference that Countess or

17  Brandon was motivated by any of the protected conduct.  Second, there is no evidence that

18  Countess or Brandon expressed opposition to plaintiff's protected conduct.  Third, plaintiff

19  offers no evidence that Countess' reasons for concluding that the incoming mail was "third party

20  correspondence" or that it promoted gang activities was false or pretextual.  *See Wood*, 753 F.3d

21  at 904-05 (speculation on defendant's motive is insufficient to defeat summary judgment).

22  Though the timing between plaintiff's January and June 2008 administrative grievances with the

23  December 10, 2008 stopping of Ms. Aguila's letter may support an inference of retaliation, *see*

24  *Coszalter*, 320 F.3d at 977, by itself, timing is usually insufficient to support a finding of

25  retaliatory motive, *see Pratt*, 65 F.3d at 808.  Outside of plaintiff's unsupported assertion that

26  Countess and Brandon were motivated by plaintiff's protected conduct, plaintiff has offered no

27  other non-concluory evidence to support his claim that the disallowance of mail from Ms. Aguila

28  was "because of" plaintiff's protected conduct.

Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment; Referring Case to
Settlement Proceedings

1    In addition, there is an absence of evidence that the stopping of this letter did not

2    reasonably advance a legitimate penological goal.  Again, it is clear that prisons have a

3    legitimate penological interest in stopping prison gang activity.  *Bruce*, 351 F.3d at 1289.  The

4    court must "afford appropriate deference and flexibility" to prison officials in the evaluation of

5    proffered legitimate penological reasons for conduct alleged to be retaliatory.  *See Pratt*, 65 F.3d

6    at 807.  Countess asserts that he stopped the incoming mail because it violated the rule against

7    third party correspondence and appeared to promote gang activities.  Plaintiff does not dispute

8    that the letter violated the rule against third party correspondence.

9    Accordingly, defendants are entitled to summary judgment on this claim.

10    C.    October 2009 incoming mail from Lorie Quiroz

11    On October 12, 2009, IGI Correctional Officer G. Pimentel and Brandon stopped

12    incoming correspondence from plaintiff's niece, Lorie Quiroz, on the basis that it was gang-

13    related.  (Third Am. Compl. ¶ 70; Nimrod Decl., Ex. O.)  The mail contained one letter and forty

14    embossed envelopes.  (Nimrod Decl. ¶ 21, Ex. O.)  Plaintiff claims that Ms. Quiroz does not

15    have an arrest record, nor does she engage in gang activities, and thus, plaintiff believed that the

16    investigators misinterpreted the contents of her letter.  (Third Am. Compl. ¶ 70.)  At the second

17    level of review, the response indicated that Ms. Quiroz's letter was investigated.  (Nimrod Decl.,

18    Ex. O.)  The response concluded that the letter contained a small amount of gang-related

19    information, i.e., information about a gang affiliate.  (*Id.*)  However, in the interest of keeping

20    gang-related information from gang affiliates, the specific contents of the letter were withheld

21    from plaintiff.  (*Id.*)  After investigation, the letter was disallowed but plaintiff was given the

22    forty embossed envelopes.  (Nimrod Decl. ¶ 21.)

23    Defendants are entitled to summary judgment on this retaliation claim because there is an

24    absence of evidence that Pimentel and Brandon's actions were "because of" plaintiff's protected

25    conduct.  Here, plaintiff argues that defendants stopped the incoming letter from Ms. Quiroz

26    because they were retaliating against plaintiff for filing *Quiroz I*, participating in Sandoval's staff

27    complaint, submitting a declaration in support of *Sandoval*, and filing seven administrative

28    grievances from January 2, 2008 through October 12, 2009.  (Third Am. Compl. ¶ 70.)

Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment; Referring Case to
Settlement Proceedings

1    First, plaintiff does not provide evidence that Pimentel even knew about plaintiff's

2  protected conduct.  Similarly, in addition to the previous times plaintiff alleged that Brandon had

3  "notice" (*Id.* ¶ 60), plaintiff refers to three more paragraphs within his third amended complaint

4  in which he claims that Brandon had "notice" of plaintiff's filing of grievances.  (*Id.* ¶¶ 60, 68,

5  69.)  However, in two of those paragraphs, the evidence merely demonstrates that Brandon

6  approved of the stopping of plaintiff's mail in December 2008 and October 2009.  (*Id.* ¶¶ 60,

7  69.)  That is, plaintiff filed administrative grievances challenging Brandon's stoppage of

8  plaintiff's mail, but there is no evidence that Brandon was aware of those grievances.  The

9  remaining paragraph in which plaintiff alleges he gave notice to Brandon is conclusory, wholly

10  unsupported, and fails to demonstrate how Brandon knew about plaintiff's protected conduct.

11  (*Id.* ¶ 68.)  Thus, there is an absence of evidence that defendants were motivated to stop Ms.

12  Quiroz's letter "because of" plaintiff's protected conduct.

13    Moreover, there is no proximity in time between Pimental and Brandon's stoppage of

14  Ms. Quiroz's incoming mail to plaintiff on October 12, 2009 and plaintiff's filing of *Quiroz I* in

15  2005 or plaintiff's participation in Sandoval's staff complaint in 2007.  *See McCollum*, 647 F.3d

16  at 882.  *Quiroz I* did not include either Pimentel or Brandon as defendants, and there is no other

17  evidence from which to infer the filing of *Quiroz I* would have resulted in retaliation by Pimentel

18  or Brandon.

19    Even assuming that Pimentel and Brandon knew about the administrative grievances,

20  suspect timing, without more, is usually not enough to show retaliatory intent.  *See Pratt*, 65

21  F.3d at 808.  Here, nothing except suspect timing supports an inference of retaliatory intent.  All

22  of the administrative grievances were filed at least nine months prior to the challenged

23  disallowance of mail from Ms. Quiroz, except for two: plaintiff's October 5, 2009 grievance and

24  October 12, 2009 grievance.  In the October 5, 2009 grievance, plaintiff was complaining about

25  being moved because he was trying to help inmate Sandoval with *Sandoval*.  (Third Am. Compl.

26  ¶ 68.)  There is no indication that defendants Pimentel or Brandon knew about this grievance or

27  the cell move.  In the October 12, 2009 grievance, plaintiff complained that incoming mail from

28  Rob Ramirez was stopped as third party correspondence.  (*Id.* ¶ 69.)  Although defendants

Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment; Referring Case to
Settlement Proceedings

1   Pimentel and Brandon were the officials who decided to stop the mail for investigation, the

2   evidence shows that plaintiff was ultimately given the letter after investigation.  (*Id.*; Nimrod

3   Decl., Ex. M.)  Without more, the timing of these administrative grievances do not give rise to

4   the reasonable inference that Pimentel or Brandon would be motivated to retaliate against

5   plaintiff.

6          Moreover, there is no evidence that Pimentel or Brandon had expressed any opposition to

7   plaintiff's protected conduct.  In addition, it is not apparent why plaintiff's grievances or

8   litigation efforts would have engendered retaliatory animus on the part of Pimentel or Brandon.

9   *See Brodheim v. Cry*, 584 F.3d 1262, 1271 (9th Cir. 2009) (recognizing that plaintiff must put

10  forth evidence that his protected conduct was the substantial or motivating factor behind

11  defendant's conduct).  Finally, plaintiff has not shown that the reasons preferred by Pimentel or

12  Brandon for stopping Ms. Quiroz's letter were false or pretextual.  Through plaintiff's

13  administrative grievances, plaintiff was told that Ms. Quiroz's letter contained information about

14  a gang affiliate, which was not permitted.  (Nimrod Decl., Ex. O.)  The Ninth Circuit has

15  instructed courts to "afford appropriate deference and flexibility" to prison officials when

16  evaluating their proffered legitimate reasons for conduct alleged to be retaliatory.  *Pratt*, 65 F.3d

17  at 807.  Plaintiff has not controverted defendants' evidence.

18         Accordingly, defendants are entitled to summary judgment on this claim.

19                    D.    January 2010 outgoing mail to Veronica Rodriguez

20         On November 26, 2009, inmate Frank Fernandez's father died.  Fernandez told plaintiff

21  about the death, and plaintiff told Fernandez that he would send Fernandez's sister, Elaine

22  Samaniego, $200 to buy flowers and help with funeral expenses.  (Third Am. Compl. ¶ 71.)  On

23  January 3, 2010, plaintiff wrote to his friend, Veronica Rodriguez, to ask her to send $200 to Ms.

24  Samaniego.  (*Id.* ¶ 72.)  On January 5, 2010, Pimentel and McGuyer stopped the letter because it

25  violated the rule of "funds enclosed in correspondence."  (*Id.* ¶ 73.)  At the second level of

26  review, plaintiff alleges that Sgt. Dornback improperly added new reasons for confiscating the

27  letter.  (*Id.*)  After plaintiff complained that Dornback added new reasons for confiscating the

28  letter, Dornback and Warden Lewis filed an amended second level of review response.  (*Id.*)

1    Plaintiff claims that Pimentel and McGuyer conspired and retaliated against him by

2 confiscating plaintiff's outgoing letter to Ms. Rodriguez that asked her to send money to Ms.

3 Samaniego.  Plaintiff also alleges that Dornback furthered the retaliation by conducting a sham

4 investigation.  Plaintiff asserts that Pimentel, McGuyer, and Dornback retaliated against plaintiff

5 for filing *Quiroz I*, participating in Sandoval's staff complaint, submitting a declaration in

6 support of *Sandoval*, and filing eight administrative grievances from January 2, 2008 through

7 October 26, 2009.  (Third Am. Compl. ¶ 73.)

8    A review of the record shows that, at the second level of review, it was determined that

9 Ms. Samaniego was identified as being the sister of inmate Frank Fernandez, who was a

10 validated Mexican Mafia prison gang associate.  (Nimrod Decl., Ex. Q.)  The reviewer

11 concluded that it was reasonable to find that plaintiff's request for the $200 was intended to be

12 used "for or on behalf of Fernandez," who was an inmate, which violated the California Code of

13 Regulations.[9]  (*Id.*)  Further, the reviewer concluded that the outgoing letter violated PBSP

14 policies against circumventing CDCR policies and procedures, and third party correspondence.

15 (*Id.*)  At the director's level of review, the appeals examiner agreed with the second level of

16 review response, and added that because plaintiff's letter to Ms. Rodriguez was sent on January

17 5, 2010, more than one month after the death of Frank Fernandez's father, it was reasonable to

18 conclude that the money was not intended for flowers or funeral expenses, but rather as a means

19 to transfer money from one inmate to another.  (*Id.*)

20    Here, plaintiff's claim fails because of an absence of evidence of retaliatory motive.  *See*

21 *McCollum*, 647 F.3d at 882.  There is no evidence that Pimentel knew about plaintiff's protected

22 conduct.  As for McGuyer and Dornback, plaintiff asserts that they had "notice" of "retaliation

23 and misconduct," but the evidence does not lead to such an inference.  (Third Am. Compl. ¶ 73,

24 citing ¶¶ 45, 49, 54, 56, 57, 60, 66, 69, 70.)  Moreover, in none of the paragraphs to which

25

26    [9] "Funds may be mailed to an inmate in the form of a money order, certified check, personal
check, or any other negotiable means except cash and travelers checks.  Funds from other

27 inmates/parolees shall be only accepted from approved correspondents . . . who are members of
the same family, or the parent of the inmate's children."  Cal. Code Regs., tit. 15, § 3140(a)(2)

28 (2009).

Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment; Referring Case to
Settlement Proceedings

1   plaintiff cites in support of his assertion does plaintiff mention McGuyer or Dornback, much less

2   provide evidence that McGuyer or Dornback had knowledge of plaintiff's protected conduct.

3          Further, as discussed previously, there is no proximity in time between defendants'

4   alleged retaliatory conduct and plaintiff's filing of *Quiroz I* in 2005, plaintiff's participation in

5   Sandoval's staff complaint in 2007, or plaintiff's 2009 declaration in support of *Sandoval*.

6   Pimentel, McGuyer, and Dornback were not named as defendants in *Quiroz I* or in *Sandoval*.

7   The administrative grievances closest in proximity in time were filed approximately three

8   months prior to the challenged confiscation of mail.  However, even assuming that a three month

9   gap is sufficient to show suspect timing, without more, it is usually not enough to show

10  retaliatory intent.  *See Pratt*, 65 F.3d at 808.  In other words, the proximity in time between these

11  events does not lead to an inference that Pimentel, McGuyer, or Dornback was substantially

12  motivated by any of the protected conduct.  *See Huskey v. City of San Jose*, 204 F.3d 893, 899

13  (9th Cir. 2000) (retaliation claim cannot rest on the logical fallacy of *post hoc, ergo propter hoc*,

14  i.e., "after this, therefore because of this").  Second, there is no evidence that Pimentel,

15  McGuyer, or Dornback expressed opposition to the protected conduct.  Third, plaintiff offers no

16  specific evidence that the defendants' reasons for concluding that plaintiff's outgoing mail was

17  an improper attempt to send inmate Frank Fernandez money was false or pretextual.  *See Wood*,

18  753 F.3d at 904-05 (speculation on defendant's motive is insufficient to defeat summary

19  judgment).  Here, at the director's level of review, the finding that plaintiff violated prison

20  policies was affirmed by non-defendants, who agreed that the confiscation of plaintiff's outgoing

21  mail was proper.  (Nimrod Decl., Ex. Q.)  Outside of plaintiff's unsupported assertion that

22  Pimentel, McGuyer, and Dornback were motivated to confiscate this letter because of plaintiff's

23  protected conduct, plaintiff has offered no non-conclusory evidence to support his claim.

24         In addition, there is an absence of evidence that the stopping of this letter did not

25  reasonably advance a legitimate penological goal.  Defendants provided evidence that the letter

26  was stopped because it was an attempt to provide funds for the benefit of another inmate, in

27  violation of the California Code of Regulations.  Again, prisons have a legitimate penological

28  interest in stopping prison gang activity, *see Bruce*, 351 F.3d at 1289, and the courts must afford

Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment; Referring Case to
Settlement Proceedings

deference to their evaluation, *see Pratt*, 65 F.3d at 807 (finding that retaliation claims brought by prisoners must be evaluated in light of concerns over "excessive judicial involvement in day-to-day prison management, which 'often squander[s] judicial resources with little offsetting benefit to anyone.'").

Accordingly, defendants are entitled to summary judgment on this claim.

E.    November 2010 incoming letter from Yvette Almos

On November 24, 2010, Pimentel stopped an incoming letter from Yvette Almos on the grounds that it discussed gang-related activity in a coded manner.  (Third Am. Compl. ¶ 95.) Plaintiff filed an administrative grievance, and also wrote to Ms. Almos asking her if the correspondence that was stopped, in fact referred to other Mexican Mafia members or communicated gang-related activity from the Colton area in a coded manner.  (*Id.* ¶¶ 98-99.)  In response, Ms. Almos answered that her letter did not do those things.  (Alvidrez Decl. ¶ 16.)  In the administrative grievance, Sgt. Frisk and Lewis both affirmed that the letter contained coded messages related to gang activity.  (Nimrod Decl., Ex. ee.)  Plaintiff claims that Pimentel and Frisk retaliated against plaintiff for filing *Quiroz I*, participating in Sandoval's staff complaint, submitting a declaration in support of *Sandoval*, and filing 17 administrative grievances from January 2, 2008 through December 9, 2010.  (Third Am. Compl. ¶ 99.)

Again, plaintiff's claim fails because of an absence of evidence of retaliatory motive.  *See McCollum*, 647 F.3d at 882.  Plaintiff does not allege that either Pimentel or Frisk had knowledge of plaintiff's previous grievances or lawsuit.  Moreover, even assuming that proximity in time between the stopping of Ms. Almos' letter and any of plaintiff's grievances is circumstantial evidence of motive, it is not sufficient by itself to lead to an inference that Pimentel or Frisk was motivated by any of the protected conduct.  *See Pratt*, 65 F.3d at 808. Second, there is no evidence that Pimentel or Frisk expressed opposition to the protected conduct.  Third, plaintiff offers no evidence that the defendants' reasons for concluding that Ms. Almos' incoming mail included inappropriate coded messages were false or pretextual.  *See Wood*, 753 F.3d at 904-05 (speculation on defendant's motive is insufficient to defeat summary judgment).

Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment; Referring Case to Settlement Proceedings

1    At the director's level of review, the findings were affirmed by non-defendants, who

2  agreed that the confiscation of Ms. Almos' mail was proper.  (Nimrod Decl., Ex. ee.)  Although

3  Ms. Almos declares that there was no reference to gangs or gang related messages in her letter,

4  that she and plaintiff disagree with defendants' stated decision for stopping the letter does not

5  necessarily demonstrate that the defendants' reasons were pretextual.  *Cf. Koutnik v. Brown*, 456

6  F.3d 777, 785 (7th Cir. 2006) (deferring to prison officials' assessment of what constitutes gang-

7  related symbols and recognizing that courts owe substantial deference to prison administrators'

8  professional judgment).  Plaintiff's argument that the letter did not include gang related activity

9  demonstrates that plaintiff disagreed with the accuracy of defendants' decision to stop the mail

10  from reaching plaintiff.  However, plaintiff's argument and Ms. Almos' opinion do not

11  demonstrate that defendants' decision to stop Ms. Almos' letter was a pretext, or that it was a

12  pretext substantially motivated by plaintiff's protected conduct.  *See, e.g.*, *Diorio v. County of*

13  *Kern*, No. 11-cv-01569 LJO JLT, 2013 WL 1127687, at *10 (E.D. Cal. March 18, 2013) (stating

14  that, in the employment context, evidence of pretense must be specific and substantial); *Keyser*

15  *v. Sacramento City Unified School Dist.*, 265 F.3d 741, 753 n.5 (9th Cir. 2001) (differentiating

16  between "specific," "substantial" evidence and opinions and beliefs that a defendant's actions

17  were retaliatory, "based on no specific or substantial evidence").  Outside of plaintiff's

18  unsupported assertion that Pimentel and Frisk were motivated to confiscate this letter because of

19  plaintiff's protected conduct, plaintiff has offered no non-conclusory evidence to support his

20  claim.

21    Finally, there is an absence of evidence that the stopping of this letter did not reasonably

22  advance a legitimate penological goal.  Defendants provided evidence that the letter was stopped

23  because it contained coded messages.  Again, it is clear that prisons have a legitimate

24  penological interest in stopping prison gang activity.  *Bruce*, 351 F.3d at 1289.  Although

25  plaintiff disputes the accuracy of defendants' actions, the court must "afford appropriate

26  deference and flexibility" to prison officials in the evaluation of proffered legitimate penological

27  reasons for conduct alleged to be retaliatory.  *See Pratt*, 65 F.3d at 807.

28    Accordingly, defendants are entitled to summary judgment on this claim.

Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment; Referring Case to
Settlement Proceedings

1

### F.   Incoming mail from Burke, Williams & Sorensen

2 On December 16, 2011, plaintiff was subject to a cell search.  Frisk and ISU Captain

3 Freeland stopped and confiscated incoming mail from Burke, Williams & Sorensen.  (Third Am.

4 Compl. ¶ 101.)  As a result of the search, plaintiff discovered that documents produced to him by

5 Short's defense counsel in discovery requests were confiscated.  (*Id.* ¶¶ 102, 103, 108.)  Plaintiff

6 alleges that Frisk and Freeland conspired and retaliated against him by stopping and destroying

7 plaintiff's legal discovery documents from Burke, Williams & Sorensen.  When Frisk

8 approached plaintiff to let plaintiff know that the documents had been confiscated, plaintiff told

9 Frisk that the documents he destroyed were privileged legal mail that was sent to him by Short's

10 lawyer.  (*Id.* ¶ 102.)  Frisk merely laughed and said, "I don't care, I know all about your

11 conspiracy theory."  (*Id.*)  Plaintiff claims that Frisk and Freeland retaliated against plaintiff for

12 filing *Quiroz I*, participating in Sandoval's staff complaint, submitting a declaration in support of

13 *Sandoval*, filing 53 administrative grievances from October 2006 through December 2011, and

14 filing the underlying federal action.  (Third Am. Compl. ¶ 107; Opp. at 43.)

15 Sgt. Pieren interviewed plaintiff for purposes of plaintiff's administrative grievance.

16 (Soderlund Decl., Ex. A.)  Pieren also reviewed the stopped mail from Burke, Williams &

17 Sorensen and found two confidential CDCR documents – the first was a "Post Order" or "Duty

18 Statement" for Short, which included information such as the procedures for how and when IGI

19 Sergeants respond to institution alarms.  (Frisk Decl. ¶ 8.)  Such information could be used by an

20 inmate to disrupt the prison, which "would jeopardize the safety and security of the institution."

21 (*Id.*; Soderlund Decl., Ex. A.)  The second document was Short's work history which included

22 personal information about Sgt. Short.  (*Id.*)  The reviewer concluded that, if an inmate were to

23 possess those documents, it would pose a risk to the safety and security of the institution.  (*Id.*)

24 At the director's level of review, non-defendants reviewed the findings and denied plaintiff's

25 appeal of his administrative grievance.

26 Plaintiff's claim fails because of an absence of evidence of retaliatory motive.  *See*

27 *McCollum*, 647 F.3d at 882.  Even assuming that proximity in time between the stopping of the

28 incoming letter from Burke, Williams & Sorensen and plaintiff's protected conduct is

Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment; Referring Case to
Settlement Proceedings

1  circumstantial evidence of motive, it is not sufficient by itself to lead to an inference that Frisk or

2  Freeland was motivated by any of the protected conduct.  *See Pratt*, 65 F.3d at 808.  Second,

3  there is no evidence that Frisk or Freeland expressed opposition to the protected conduct.

4  Plaintiff asserts that when Frisk informed plaintiff that the discovery had been destroyed because

5  they were confidential documents, plaintiff informed Frisk that the documents were evidence

6  from Short's attorney in support of plaintiff's underlying complaint.  (Third Am. Comp. ¶ 102.)

7  According to plaintiff, Frisk responded, "I don't care.  I know all about your conspiracy theory,"

8  and laughed while Frisk left.  (*Id.*)  However, Frisk's statement was not an expression of

9  opposition to plaintiff's filing of *Quiroz I* or administrative grievances.  At most, Frisk

10  acknowledged that he knew about plaintiff's filings, but awareness and opposition are not the

11  same for these purposes.  *See McCollum*, 647 F.3d at 882 (making a distinction between

12  "awareness" and "opposition").  Third, plaintiff offers no evidence that the defendants' reasons

13  for confiscating the incoming mail on the ground that the information was confidential to

14  inmates were false or pretextual.  *See Wood*, 753 F.3d at 904-05 (speculation on defendant's

15  motive is insufficient to defeat summary judgment).  At the director's level of review, the

16  findings were affirmed by non-defendants, who agreed that the confiscation of the documents

17  was proper.  (Soderlund Decl., Ex. A.)  In addition, courts in this circuit have concluded that

18  Post-Orders such as the one confiscated by defendants are deemed confidential.  *See, e.g.*,

19  *Rogers v. Emerson*, No. 12-1827 AWI, 2013 WL 6383239, at *3 (E.D. Cal. Dec. 4, 2013)

20  (unpublished).  Outside of plaintiff's unsupported assertion that Frisk and Freeland were

21  motivated to confiscate these documents because of plaintiff's protected conduct, plaintiff has

22  offered no non-conclusory evidence to support his claim.

23         Accordingly, defendants are entitled to summary judgment on this claim.

24                          G.   April 2012 incoming mail from Vivian Chavez

25         On April 17, 2012, IGI Correctional Officer Healy and Freeland stopped an incoming

26  letter from Vivian Chavez, on the basis that it contained coded messages and promoted gang

27  activity.  (Third Am. Compl. ¶ 109.)  Plaintiff alleges that Pieren conspired to retaliate against

28  him by conducting a sham investigation.  (*Id.* ¶ 111.)  Plaintiff refuted that the letter from Ms.

Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment; Referring Case to
Settlement Proceedings

1  Chavez included coded messages or promoted gang activity.  (*Id.* ¶ 110.)  Plaintiff claims that

2  Healy, Freeland, and Pieren retaliated against plaintiff for filing *Quiroz I*, participating in

3  Sandoval's staff complaint, submitting a declaration in support of *Sandoval*, filing 59

4  administrative grievances from October 2006 through April 2012, and litigating the underlying

5  federal lawsuit.  (Third Am. Compl. ¶ 112; Opp. at 37.)

6          First, there is an absence of evidence that Healy, Freeland, or Pieren knew about any of

7  plaintiff's protected conduct.  As such, they could not have been motivated by retaliation.

8  Morever, even though timing may properly be considered as circumstantial evidence of

9  retaliatory intent, alone it is insufficient to support a retaliation claim.  *Pratt*, 65 F.3d at 808; *see*

10  *Stone v. Becerra*, No. 10-138 RMP, 2011 WL 1565299, *3 (E.D. Wash. April 25, 2011) (timing

11  of cell search, without more, was insufficient to allege that search was retaliatory), *aff'd by* 520

12  Fed. Appx. 542 (9th Cir. May 22, 2013) (unpublished memorandum disposition).  Moreover,

13  there is no indication why Healy, Freeland, or Pieren would have any retaliatory animus for

14  *Quiroz I* or the underlying federal action because Healy, Freeland, and Pieren were not

15  defendants in *Quiroz I*, and they were not named as defendants in this action until after this

16  challenged stopping of mail.  In addition, plaintiff's participation in Sandoval's staff complaint

17  and submission of a declaration in support of *Sandoval* appear to have little relevance to Healy,

18  Freeland, or Pieren because they were not defendants in *Sandoval*.

19          Nonetheless, even assuming that the timing is suspect, there is no evidence that Healy,

20  Freeland, or Pieren expressed opposition to plaintiff's protected conduct.  Furthermore, plaintiff

21  offers no non-speculative evidence that the defendants' reasons for confiscating the incoming

22  mail on the grounds that the letter was coded and contained gang-related material were false or

23  pretextual.  *See Wood*, 753 F.3d at 904-05 (speculation on defendant's motive is insufficient to

24  defeat summary judgment).  At the director's level of review, the findings were affirmed by non-

25  defendants, who agreed that the confiscation of the mail was proper.  (Soderlund Decl., Ex. C.)

26  Outside of plaintiff's unsupported assertion that Healy, Freeland, and Pieren were motivated to

27  confiscate this letter because of plaintiff's protected conduct, plaintiff has offered no non-

28  conclusory evidence to support his claim.  Moreover, as previously stated, defendants have

Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment; Referring Case to Settlement Proceedings

1  provided evidence that the stop was intended to prevent gang-related activity, which serves a

2  legitimate penological purpose.

3         Accordingly, defendants are entitled to summary judgment on this claim.

4                      2.     <u>Delay of mail</u>

5         Plaintiff sets forth three instances where defendants delayed plaintiff's incoming or

6  outgoing mail after defendants stopped the mail for investigation.  (Third Am. Compl. ¶¶ 69, 81,

7  84.)  In each instance, defendants ultimately concluded that plaintiff's mail did not violate prison

8  policies, and delivered the mail to the intended recipients.  (*Id.* ¶¶ 69, 81, 84.)

9         First, on September 20, 2009, Pimentel and Brandon stopped incoming mail from Rob

10  Ramirez because Pimental and Brandon determined that the incoming mail contained third party

11  correspondence.  (Third Am. Compl. ¶ 69; Nimrod Decl. ¶ 19.)  Plaintiff complained that the

12  letter was merely relaying a message from a friend or family member.  (Third Am. Compl. ¶ 69.)

13  On or around October 24, 2009, at the first level of review of plaintiff's administrative

14  grievance, Pieren agreed with plaintiff that the contents of the letter did not violate prison

15  policies and delivered the letter to plaintiff.  (*Id.*)

16         Second, on January 29, 2010, Pimentel and McGuyer stopped incoming mail from

17  Elizabeth Castenada because Pimentel and McGuyer believed the correspondence was an

18  attempt to facilitate third party correspondence or pass messages.  (Third Am. Compl. ¶ 81;

19  Nimrod Decl. ¶ 26.)  Plaintiff filed an administrative grievance.  Pieren granted plaintiff's

20  administrative grievance, concluding that "although the wording in the letter could be construed

21  as trying to establish a third party communication, it in fact did not meet the definition . . . ."

22  (Nimrod Decl., Ex. T.)  As a result, on March 10, 2010, plaintiff was given the letter.  (*Id.*)

23         Third, on March 12, 2010, non-defendant IGI Correctional Officer Puente[10] and

24  McGuyer stopped plaintiff's outgoing mail to Veronica Rodriguez on the ground that the mail

25  was an attempt to circumvent regulations and violate the prohibition on contraband.  (Third Am.

26  Compl. ¶ 84; Nimrod Decl. ¶ 28.)  Plaintiff filed an administrative grievance.  Pieren granted

27

28

---

[10] Puente was voluntarily dismissed from this case by plaintiff.

Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment; Referring Case to Settlement Proceedings

23

1  plaintiff's administrative grievance, finding that the outgoing mail did not appear to violate the

2  prison policies and mailed out plaintiff's correspondence the following day, on March 13, 2010.

3  (Nimrod Decl., Ex. V.)

4     Defendants are entitled to summary judgment on these claims of retaliation because there

5  is an absence of evidence as to causation and whether the delay chilled plaintiff's First

6  Amendment right to file grievances and lawsuits.

7     In determining whether a retaliatory motive exists, a relevant factor includes whether the

8  defendant was aware of the prisoner's protected conduct.  *Pratt*, 65 F.3d at 808.  Here, plaintiff

9  does not proffer facts to show that Pimentel knew about plaintiff's protected conduct or that the

10  protected conduct motivated Pimentel to retaliate.  (Third Am. Compl. ¶¶ 69, 81, 84.)

11     On the other hand, plaintiff asserts that he gave notice to Brandon about plaintiff's

12  allegations of "retaliation and misconduct" and refers to seven paragraphs within plaintiff's third

13  amended complaint in support of his assertion.  (*Id.* ¶ 69, citing ¶¶ 45, 49, 54, 56, 57, 60, 68.)  In

14  one paragraph, plaintiff alleges that in January 2008, plaintiff told Brandon about *Quiroz I* and

15  plaintiff's belief that IGI officers have been tampering with his mail in retaliation for the lawsuit.

16  (*Id.* ¶ 45.)  However, there is no evidence to demonstrate why Brandon would be motivated to

17  retaliate against plaintiff for a lawsuit that did not name Brandon as a defendant.  Plaintiff further

18  asserts that in the spring of 2008, Brandon and other IGI officers were reading declarations that

19  inmates had submitted in support of *Quiroz I*.  (*Id.* ¶ 49.)  Again, it is not clear how this would

20  demonstrate that Brandon would have a retaliatory motive.  In two other paragraphs, in an

21  attempt to show motive, plaintiff alleges that Brandon approved of the stopping of plaintiff's

22  mail in June and December 2008.  (*Id.* ¶¶ 45, 60.)  Plaintiff filed administrative grievances

23  challenging the stopping of his mail, but there is no evidence that Brandon was aware of the

24  grievances.  The remaining paragraphs in which plaintiff alleges he gave notice to Brandon

25  include no facts to support the assertion that Brandon knew about plaintiff's protected conduct.

26  (*Id.* ¶¶ 56, 57, 68.)  In addition, there are no facts alleging that McGuyer had notice of plaintiff's

27  protected conduct.  (*Id.* ¶¶ 45, 60.)

28     Regarding the stopping of plaintiff's outgoing mail to Ms. Rodriguez, plaintiff claims

Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment; Referring Case to Settlement Proceedings

1   that plaintiff gave McGuyer notice of plaintiff's protected conduct.  (*Id.* ¶ 84, citing ¶¶ 69, 70,

2   73, 76, 80, 81, 83.)  However, the court has reviewed the paragraphs to which plaintiff cites as

3   support for his assertion that McGuyer had notice of plaintiff's protected conduct.  None of those

4   paragraphs demonstrate that McGuyer had knowledge of plaintiff's protected conduct.  In

5   addition, plaintiff does not allege facts to show that McGuyer knew about *Quiroz I*.  In two of

6   the cited paragraphs, plaintiff states that on January 5 and January 29, 2010, McGuyer approved

7   Pimentel's decision to stop incoming mail to plaintiff, and outgoing mail from plaintiff.  (*Id.* ¶¶

8   73, 81.)  However, even though plaintiff challenged these findings by filing administrative

9   grievances, there is no evidence that McGuyer knew about those grievances.  In another

10  paragraph, plaintiff states that he challenged the loss of several drawings in an administrative

11  grievance, and at director's level of review, plaintiff alleged that McGuyer was a supervisor who

12  failed to remedy the problem.  (*Id.* ¶ 80.)  However, again, this is insufficient to infer that

13  McGuyer knew about plaintiff's protected conduct, much less was substantially motivated by

14  that conduct to retaliate.

15         In addition, although retaliatory motive may be shown by the timing of the allegedly

16  retaliatory act and inconsistency with previous actions, *Bruce*, 351 F.3d at 1288-89, retaliatory

17  motive is not established simply by showing adverse activity by the defendant after protected

18  conduct; rather, the plaintiff must show a nexus between the two, *Huskey*, 204 F.3d at 899

19  (retaliation claim cannot rest on the logical fallacy of *post hoc, ergo propter hoc*, i.e., "after this,

20  therefore because of this").  Here, plaintiff has not met his burden of showing that retaliation was

21  the "substantial" or "motivating" factor behind Pimentel, McGuyer, or Brandon's actions.

22  Plaintiff's bare factual assertions that the stopping of his mail was motivated by such reason is

23  no more than *post hoc, ergo propter hoc*.  In other words, plaintiff asserts that because he filed

24  grievances and litigated lawsuits, the stops must have been retaliatory based upon suspect

25  timing.  Yet, plaintiff has put forth no non-speculative evidence showing a triable issue of fact as

26  to a causal nexus.  For example, he offers no evidence of having personal knowledge, as opposed

27  to offering speculation, of such a motive.  Further, there is no evidence that any of these

28  defendants expressed opposition to plaintiff's protected conduct.  Nor is there evidence tending

1  to show that Pimentel, McGuyer, or Brandon's reasons for stopping or approving of the stopped

2  mail were false or pretextual.

3      In addition, plaintiff has not shown that these instances of stopped mail chilled the

4  exercise of his First Amendment right to file grievances or lawsuits.  A prisoner must at least

5  allege that he suffered harm, since harm that is more than minimal will almost always have a

6  chilling effect. *Rhodes*, 408 F.3d at 567-68 n.11; *see Resnick v. Hayes*, 213 F.3d 443, 449 (9th

7  Cir. 2000) (holding that a retaliation claim is not actionable unless there is an allegation of

8  harm).  The prisoner need not demonstrate a total chilling of his First Amendment rights in order

9  to establish a retaliation claim. *See Rhodes*, 408 F.3d at 568-69 (destruction of inmate's property

10  and assaults on the inmate enough to chill inmate's First Amendment rights and state retaliation

11  claim, even if inmate filed grievances and a lawsuit).  "[T]he proper First Amendment inquiry

12  asks whether an official's acts would chill or silence a person of ordinary firmness from future

13  First Amendment activities." *Id.* at 568.

14      Here, although a court must accept as true all factual allegations contained in a

15  complaint, a court need not accept a plaintiff's legal conclusions as true. *Iqbal*, 556 U.S. at 678.

16  Outside of reciting the element that defendants "chilled" plaintiff's First Amendment rights,

17  plaintiff does not otherwise support this element with any facts.  "Threadbare recitals of the

18  elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

19  Even so, an allegation of harm, rather than a "chilling effect," may be a sufficient basis for a

20  claim of retaliation. *Rhodes*, 408 F.3d at 569-70.  However, in the three challenged instances of

21  delayed mail, there is an absence of evidence that plaintiff was harmed.  In each instance,

22  plaintiff promptly contested the stopping of the mail, and on appeal of plaintiff's administrative

23  grievance, it was determined that plaintiff was correct.  Thereafter, plaintiff's mail was

24  delivered.  In a constitutional tort, as in any other, a plaintiff must allege that the defendant's

25  actions caused him some injury. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S.

26  274, 285-87 (1977).  Here, despite plaintiff's mail being held for further investigation, it was

27  ultimately found that the mail should be delivered because the mail did not violate prison

28  policies.  Plaintiff has not provided sufficient evidence that the delay of his mail had a chilling

Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment; Referring Case to
Settlement Proceedings

1   effect on plaintiff's First Amendment activities, or that plaintiff was otherwise harmed.

2       Because there is an absence of evidence regarding causation as well as a chilling effect,

3   defendants are entitled to summary judgment on these claims.[11]

4              3.    Withholding of prisoner declarations

5       On January 14, 2008, plaintiff requested, and was ultimately granted, approval to receive

6   approximately 22 declarations from prisoners to use in support of *Quiroz I*. (Third Am. Compl.

7   ¶ 47.) On April 17, 2008, after having not received three such declarations (from inmates Victor

8   Acuna, Mike Lerma, and Kenneth Johnson), plaintiff filed an administrative grievance regarding

9   the undelivered declarations. (*Id.* ¶ 49.) At the first level of review, plaintiff's grievance was

10  granted with the response that the IGI's office possessed none of the documents. (*Id.* ¶ 50.) On

11  June 3, 2008, plaintiff wrote to Wilber, informing Wilber that "there was serious problem with

12  the mailroom" or the IGI's office because inmate Acuna told plaintiff that Acuna had sent

13  plaintiff the declaration a month prior. (*Id.* ¶ 53.) Plaintiff told Wilber that the IGI's office and

14  Horel were defendants in *Quiroz I*, and that plaintiff believed that the IGI's office and Horel

15  were trying to prevent plaintiff from submitting the declarations. (*Id.*) Plaintiff further informed

16  Wilber that Hernandez told plaintiff that Hernandez recently found a declaration in her desk

17  from inmate Acuna which had been sent to the IGI's office a month prior. (*Id.*) Plaintiff later

18  found out that the declaration from inmate Lerma had been confiscated by non-defendant Rice[12]

19  and Brandon because Lerma had submitted his declaration with a declaration from inmate

20  Raymond Cazares in support of *Quiroz I*. (*Id.*) The parties do not state whether plaintiff

21  ultimately received any of the three declarations.

22       Plaintiff claims that Wilber retaliated against plaintiff by screening out the administrative

23  grievance, and Hernandez and Brandon retaliated against plaintiff by withholding the challenged

24 ――――――――――――

25     [11] Defendants also argue that they are entitled to summary judgment on plaintiff's claim that
an unknown defendant discarded two items of mail. (MSJ at 27-28.) However, plaintiff only
26  names Short as the liable principle defendant regarding these claims. (Third Am. Compl. ¶¶ 80,
83.) The court address these claims in a separate order on Short's motion for summary
27  judgment.

28     [12] Rice was voluntarily dismissed from this case by plaintiff.

Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment; Referring Case to
Settlement Proceedings

1  declarations. (*Id.*) Plaintiff alleges that defendants did so because of plaintiff's protected

2  conduct.

3        However, plaintiff has not provided any non-speculative evidence to infer that Hernandez

4  or Brandon withheld the declarations sent by inmates Acuna, Lerma, or Johnson. Brandon has

5  submitted a declaration that he was not aware of Lerma's declaration being stopped. (Brandon

6  Decl. (Reply) ¶ 2.) In support of his statement, Brandon points to a copy of the stopped mail

7  notification, which indicates that the declaration was stopped because it violated the rule against

8  inmate-to-inmate one time correspondence. (Pl. Opp., Pl. Decl., Ex. B ("Lerma Decl."), Ex. A;

9  Docket No. 294 at 23.) The inmate-to-inmate one time correspondence rule allows SHU inmates

10  to communicate with each other on a one time basis for the limited purpose of communicating

11  about a court case. (Countess Decl. (Reply) ¶ 3.) The stopped mail notification issued because

12  the correspondence from Lerma contained an unapproved affidavit from another inmate. (*Id.*)

13  The evidence demonstrates that the stopped mail notification is signed by non-defendants Rice

14  and Captain Vanderhoofven, but not by Brandon. (Docket No. 294 at 23.) Brandon declared

15  that although Brandon was the ISU Captain, the stopped mail was issued by Rice and Captain

16  Vanderhoofven, who was Acting ISU Captain at that time. (Brandon Decl. (Reply) ¶ 2.)

17  Plaintiff has not submitted any evidence contradicting this assertion.

18        With respect to Johnson's declaration, Brandon points to a request for interview form

19  submitted by plaintiff inquiring about Johnson's declaration. (Docket No. 253-1 at 75.) On that

20  form, non-defendant Correctional Counselor Barnts wrote that Johnson's affidavit was "being

21  reviewed by IGI" and Barnts indicated that he would "get back to [plaintiff] ASAP." (*Id.*)

22  However, there is an absence of evidence that either Brandon or Hernandez were the individuals

23  who withheld Johnson's declaration.

24        With regard to inmate Acuna's declaration, plaintiff submitted an administrative

25  grievance on April 17, 2008 claiming that Acuna's declaration was not given to plaintiff by IGI

26  officers. (*Id.* ¶ 49.) However, plaintiff does not submit any admissible evidence such as

27  personal knowledge as to when, if at all, Acuna actually sent his declaration to plaintiff. *See*

28  Fed. R. Evid. 602. Further, plaintiff also states that Acuna told plaintiff that Acuna did not send

Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment; Referring Case to
Settlement Proceedings

1  his declaration until May – after plaintiff filed his initial administrative grievance.  (*Id.* ¶ 53.)  In

2  addition, in the administrative grievance, plaintiff did not accuse any specific defendant of

3  withholding the declaration.  In plaintiff's opposition, plaintiff accuses Hernandez of

4  purposefully withholding Acuna's declaration from plaintiff because she was retaliating against

5  plaintiff for filing an administrative grievance regarding the missing declarations.  (Opp. at 17.)

6  However, there is no evidence to suggest that Hernandez was even aware of plaintiff's

7  administrative grievance.  Plaintiff alleges that in June 2008, Hernandez informed plaintiff that

8  she had "just recently" found Acuna's declaration in her desk.  Defendants dispute that

9  Hernandez made such a statement, but the court accepts as true plaintiff's allegation for purposes

10  of defendant's motion for summary judgment.  Even assuming plaintiff's allegation is

11  true, there is still an absence of evidence that Hernandez knew that plaintiff filed an April 17,

12  2008 administrative grievance complaining about the missing declarations and purposefully

13  withheld Acuna's declaration from plaintiff.

14  　　　　In addition, plaintiff has not provided any evidence of retaliatory motive.  Even assuming

15  that the timing was suspect, neither Hernandez nor Brandon were named in *Quiroz I* as

16  defendants.  There is no plausible evidence to infer that Hernandez or Brandon had illegitimate

17  reasons to withhold these declarations, much less to retaliate against plaintiff for a lawsuit that

18  did not involve either of them.  Further, there is no evidence that Hernandez or Brandon

19  expressed opposition to plaintiff's protected conduct.  Plaintiff does not submit specific evidence

20  to infer that Hernandez's statement that she "found" Acuna's declaration or Brandon's statement

21  as to why Lerma's declaration was stopped was false or pretextual.  *See Anthoine v. North*

22  *Central Counties Consortium*, 605 F.3d 740, 753 (9th Cir. 2010) (where plaintiff relies on

23  circumstantial evidence to show retaliation, that evidence must be specific to defeat the motion

24  for summary judgment).  With respect to Hernandez, plaintiff does not suggest that Hernandez

25  knew about plaintiff's protected conduct.  Plaintiff merely states that upon asking Hernandez,

26  Hernandez told plaintiff she had "found" inmate Acuna's declaration in her desk.  (*Id.* ¶ 53.)

27  This evidence does not purport to provide a nexus for retaliatory motive, nor does it suggest that

28  Hernandez knew about plaintiff's protected conduct or purposely withheld declarations for a

1  retaliatory motive.  Finally, documentary evidence shows that Brandon did not confiscate

2  Lerma's declaration, as supported by the stopped mail form which was issued by non-defendants

3  Rice and Vanderhoofven.  Moreover, the decision to stop the mail containing Lerma's

4  declaration was because the mail containing Lerma's declaration violated the rule against

5  inmate-to-inmate one time correspondence.  Plaintiff provides no contradictory evidence from

6  which to infer that Brandon withheld Lerma's declaration with any retaliatory intent, much less

7  because of plaintiff's protected conduct.

8      In short, there is an absence of evidence that Hernandez or Brandon withheld the

9  declarations or that they did so "because of" plaintiff's protected conduct.

10     Plaintiff claims that Wilber retaliated against plaintiff by improperly screening out

11  plaintiff's appeal of his administrative grievance, and rejecting plaintiff's attempt to request that

12  Wilber investigate plaintiff's claims.  (Third Am. Compl. ¶ 53.)  On May 17, 2008, plaintiff's

13  administrative grievance regarding the missing declarations was granted at the informal level,

14  when the response stated that the IGI office had none of plaintiff's legal documents.  (Opp. at 9-

15  10.)  Plaintiff appealed the response on May 20, 2008 to Wilber, complaining that four months

16  prior, plaintiff requested declarations from other inmates but had not yet received any.  (*Id.*)

17  Wilber screened out the appeal of the administrative grievance, and responded that plaintiff's

18  requested action had previously been granted and no further action was required.  (*Id.*)  Plaintiff

19  claims that Wilber screened out this appeal of the administrative grievance because plaintiff filed

20  *Quiroz I*, and filed the underlying administrative grievance.  (Third Am. Compl. ¶ 53.)

21     However, without more, suspect timing is insufficient to lead to a reasonable inference of

22  retaliatory motive.  There is no evidence that Wilber expressed opposition to plaintiff's

23  administrative grievance or plaintiff's filing of *Quiroz I*.  There is also no evidence that Wilber's

24  decision to screen out the appeal of plaintiff's administrative grievance because plaintiff's

25  informal level of appeal had already been granted was false or pretextual.  (Opp. at 16; Wilber

26  Decl. (Reply) ¶ 7.)  In an attempt to demonstrate retaliatory motive, plaintiff argues that a month

27  before Wilber screened out the appeal of plaintiff's administrative grievance, Wilber had

28  submitted a declaration in support of defendants in *Quiroz I*.  (Opp. at 17.)  Wilber concedes that

Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment; Referring Case to
Settlement Proceedings

he did so, however, Wilber explains that as the appeals coordinator at that time, Wilber was also the custodian of non-health care related administrative appeals of grievances by PBSP inmates. (Wilber Decl. (Reply) ¶ 2.)  As part of his duties, he routinely prepared declarations describing the status of an inmate's administrative appeals in support of motions to dismiss inmate lawsuits. (*Id.* ¶¶ 4-5.)  Moreover, Wilber asserts that his declaration in *Quiroz I* merely described the status of three of plaintiff's administrative appeals of plaintiff's grievances.  There is no evidence that Wilber expressed any opinion regarding *Quiroz I* in his declaration, nor is there any other reason to suggest that Wilber's submission of a declaration in *Quiroz I* would lead to an inference of a retaliatory motive.  Thus, plaintiff has not provided any specific or substantial evidence to support an inference that Wilber's reason for screening out plaintiff's appeal of the grievance regarding the declarations from Lerma, Johnson, and Acuna was false or pretextual. *See Anthoine*, 605 F.3d at 753.

Accordingly, defendants are entitled to summary judgment on this claim.

### 4.    RVR for requesting dictionary for Alfred

Plaintiff claims that on February 12, 2010, Short issued an RVR against plaintiff in retaliation for plaintiff's protected conduct.  The RVR charged plaintiff with promoting gang activity.  It stated that on February 12, 2010, defendant learned that inmate Alfred Sosa, a validated Mexican Mafia member, received a Random House Webster's Unabridged Dictionary which had been purchased by Ms. Gallegos.  (Nimrod Decl. ¶ 29, Ex. W at 15.)  Short remembered that, on January 6, 2010, Short had reviewed a letter written by plaintiff to Ms. Gallegos, giving her the information needed to buy a Random House Unabridged Dictionary for "Alfred."  (*Id.*)  The RVR presumed that plaintiff's reference to "Alfred" referred to inmate Alfred Sosa, a Mexican Mafia gang member.  Also, based on a 2005 prison confidential memorandum, Short knew that Ms. Gallegos was the secretary of Michael DeLia, Sosa's crime partner.  According to the 2005 prison confidential memorandum, DeLia and Sosa assassinated DeLia's wife for allegedly talking to authorities about the Mexican Mafia gang.  Based on that information, Short issued an RVR to plaintiff for promoting gang activity, in violation of California Code of Regulations, title 15 § 3023.  D. Barneburg approved the issuance of the

1   RVR.  Senior Hearing Officer Coulter presided over the disciplinary hearing and found plaintiff
2   guilty of promoting gang activity.

3          Defendants argue that they are entitled to summary judgment on this claim because there
4   is an absence of evidence that D. Barneburg and Coulter knew about plaintiff's protected
5   conduct, and further, that D. Barneburg and Coulter had legitimate reasons for charging and
6   finding plaintiff guilty of promoting gang activity.

7          To support plaintiff's assertion that circumstantial evidence supports an inference of
8   retaliatory motive, plaintiff asserts that D. Barneburg and Coulter knew that plaintiff had filed
9   *Quiroz I*, participated in Sandoval's staff complaint, submitted a declaration in support of
10  *Sandoval*, and submitted administrative grievances between October 2006 through February
11  2010.  (Third Am. Compl. ¶ 85; Opp. at 27.)  Here, there is an inference that D. Barneburg knew
12  about some of plaintiff's conduct because D. Barneburg was listed as a defendant in *Sandoval*,
13  and plaintiff participated in both Sandoval's staff complaint in 2007, which is related to
14  *Sandoval*, and submitted a declaration in *Sandoval*.

15         However, there is no evidence that Coulter knew about plaintiff's protected conduct.
16  Plaintiff cites to 15 paragraphs within his third amended complaint in an attempt to demonstrate
17  that Coulter had "notice" of defendants' retaliation and misconduct.  (Third Am. Compl ¶ 85,
18  citing ¶¶ 45, 49, 54, 56, 57, 60, 68, 69, 70, 73, 76, 80, 81, 83, and 84.)  However, with the
19  exception of one of those paragraphs, the other cited paragraphs do not even mention Coulter.
20  As to the one paragraph that mentions Coulter, plaintiff merely alleges that on November 29,
21  2009, Coulter allowed inmate Frank Fernandez to make a phone call regarding the death of
22  Fernandez's father.  (*Id.* ¶ 73.)  In sum, the paragraphs to which plaintiff cites do not provide
23  evidence that Coulter knew about plaintiff's protected conduct.  Without such evidence,
24  plaintiff's claim against Coulter cannot survive summary judgment.  *See Corales*, 567 F.3d at
25  568 ("a plaintiff creates a genuine issue of material fact on the question of retaliatory motive
26  when he or she produces, *in addition to evidence that the defendant knew of the protected
27  speech*, at least (1) evidence of proximity in time between the protected speech and the allegedly
28  retaliatory decision, (2) evidence that the defendant expressed opposition to the speech or (3)

Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment; Referring Case to
Settlement Proceedings

1  evidence that the defendant's proffered reason for the adverse action was false or pretextual.")

2  (italics in original) (internal quotation marks omitted).

3        As to D. Barneburg, in addition to knowledge of protected conduct, plaintiff must

4  provide evidence that supports an inference of retaliatory motive.  Based on the record, the court

5  finds that a reasonable inference can be made that D. Barneburg's decision to approve the

6  issuance of the RVR because it promoted gang activity is false or pretextual.  The RVR stated

7  that plaintiff asked Ms. Gallegos to purchase a particular dictionary for inmate Sosa, who is also

8  a Mexican Mafia member.  Based on such evidence, in addition to a 2005 prison confidential

9  memorandum indicating that Ms. Gallegos was the secretary of Sosa's crime partner, Short

10  issued, and D. Barneburg approved, an RVR for promoting gang activity in violation of

11  California Code of Regulations, title 15 § 3023.[13]

12        However, the undisputed evidence shows that the substance of plaintiff's letter concerns

13  the request to buy a new dictionary for someone named Alfred.  (Docket No. 254, Ex. 31.)

14  Defendants do not allege, nor is there evidence demonstrating, that the letter contained coded or

15  gang-related messages.  In fact, defendants does not assert how plaintiff's request to Ms.

16  Gallegos to purchase a new dictionary for another inmate, who is also a gang member, promotes,

17  furthers, or assists a gang in violation of Section 3023.  In short, defendants do not attempt to

18  explain how plaintiff's request to purchase a new dictionary for Alfred knowingly promoted

19  gang activity or was a threat to prison security.

20        Moreover, an RVR is issued for a serious rules violation.  The California Code of

21  Regulations gives a non-exhaustive list of examples of serious rules violations to include such

22

23     [13]  Section 3023 provides: "(a) Inmates and parolees shall not knowingly promote, further or

24  assist any gang as defined in section 3000.  (b) Gangs, as defined in section 3000, present a
serious threat to the safety and security of California prisons."  15 Cal. Code Regs. § 3023

25  (2010).  Section 3000 defines "gang" as, "Gang means any ongoing formal or informal
organization, association or group of three or more persons which has a common name or

26  identifying sign or symbol whose members and/or associates, individually or collectively,
engage or have engaged, on behalf of that organization, association or group, in two or more acts

27  which include, planning, organizing threatening, financing, soliciting, or committing unlawful
acts or acts of misconduct classified as serious pursuant to section 3315."  Cal. Code Regs., tit.

28  15, § 3000.

Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment; Referring Case to
Settlement Proceedings

1    circumstances as: use of force or violence against another person, a breach of or hazard to

2    facility security, a serious disruption of facility operations, manufacturing a controlled substance,

3    and willfully inciting others to commit an act of force or violence.  *See* Cal. Code Regs., tit. 15, §

4    3015.  Here, there is an absence of evidence showing how plaintiff's letter requesting the buying

5    of a new dictionary for another inmate reaches the level of a serious rule violation.  Indeed, at the

6    conclusion of the disciplinary hearing, Coulter admitted that "this offense is not explicitly listed

7    [as a serious rule violation] under CCR 3315 as a serious offense" but then justified the guilty

8    finding because promoting gang activity represents a serious threat to prison security.  (Nimrod

9    Decl., Ex. W.)

10       Here, the disconnect between the issuance of, and the stated reasons for, the RVR and the

11   offending letter leads to a reasonable inference that those reasons are pretextual.

12       Defendants also argue that there was a legitimate penological goal for issuing the RVR,

13   i.e., it is clear that prisons have a legitimate penological interest in stopping prison gang activity.

14   *See Bruce*, 351 F.3d at 1289.  However, the Ninth Circuit has cautioned that "prison officials

15   may not defeat a retaliation claim on summary judgment simply by articulating a general

16   justification for a neutral process, when there is a genuine issue of material fact as to whether the

17   action was taken in retaliation for the exercise of a constitutional right."  *Id*.  Here, because there

18   is a genuine issue of material fact as to retaliatory motive, defendants cannot rely on the prison's

19   legitimate penological interest in prison security to succeed on their motion for summary

20   judgment.  Moreover, based on the absence of evidence supporting the issuance of the RVR for

21   promoting gang activity, the court finds that there is also a genuine issue of material fact as to

22   whether the issuance of the RVR reasonably advanced a legitimate penological goal.

23       Viewing the evidence in the light most favorable to plaintiff, based on the inference that

24   the reason for issuing the RVR was pretextual, and the inference that the issuance of the RVR

25   did not reasonably advance a legitimate penological goal, the court finds that there are genuine

26   issues of material fact regarding whether D. Barneburg retaliated against plaintiff.  However,

27   because there is an absence of evidence that Coulter knew about protected conduct, there is

28   necessarily an absence of evidence that Coulter harbored a retaliatory motive.  Thus, summary

Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment; Referring Case to
Settlement Proceedings

1    judgment is granted on this retaliation claim as to Coulter.

2         Alternatively, defendants argues that D. Barneburg is entitled to qualified immunity.  The

3    defense of qualified immunity protects "government officials . . . from liability for civil damages

4    insofar as their conduct does not violate clearly established statutory or constitutional rights of

5    which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818

6    (1982).  A court considering a claim of qualified immunity must determine whether the plaintiff

7    has alleged the deprivation of an actual constitutional right and whether such right was clearly

8    established such that it would be clear to a reasonable officer that his conduct was unlawful in

9    the situation he confronted.  *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).  "[U]nder either

10   prong, courts may not resolve genuine disputes of fact in favor of the party seeking summary

11   judgment," and must, as in other cases, view the evidence in the light most favorable to the non-

12   movant.  *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (per curiam).

13        Viewing the evidence in the light most favorable to plaintiff, D. Barneburg is not entitled

14   to qualified immunity.  Here, it would have been clear to D. Barneburg that approving the

15   issuance of an RVR in retaliation for plaintiff's protected conduct would violate the law.

16   Accordingly, D. Barneburg is not entitled to qualified immunity.

17              5.    Failure to notify plaintiff of trust seizure

18        On July 8, 2010, Superior Court Judge Ransom issued a court order for seizure of

19   approximately $91,000 from inmate accounts, including $276.63 from plaintiff's account.

20   (Third Am. Compl. ¶¶ 90-91.)  Plaintiff alleges that D. Barneburg, IGI Correctional Officer

21   Milligan, and non-defendant IGI Supervisor Hawkes[14] conspired and retaliated against plaintiff

22   by not informing him about the court's order and not giving him a receipt.  (*Id.* ¶¶ 91, 94.)  D.

23   Barneburg typed receipts for the other 35 inmates, but not for plaintiff.  Hawkes and Milligan

24   further personally informed all other 35 inmates and gave them receipts informing them of the

25   court order, but did not inform plaintiff or provide him with a receipt.  On July 17, 2010, plaintiff

26   tried to buy commissary, but was informed that plaintiff had no money in his account.  (*Id.* ¶ 92;

27

28
     _____
     [14]  Hawkes was voluntarily dismissed from this case by plaintiff.
     Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment; Referring Case to
     Settlement Proceedings

                                                    35

1  Opp. at 30.)  Plaintiff filed an administrative grievance claiming an illegal seizure of funds.

2  (Third Am. Compl. ¶ 93.)  Plaintiff alleges that D. Barneburg and Milligan intentionally failed to

3  inform plaintiff about the seizure of funds from plaintiff's account in retaliation against

4  plaintiff's protected conduct.

5       First, plaintiff does not allege that Milligan was aware of plaintiff's protected conduct.

6  Thus, there is no causal connection between Milligan's omission and plaintiff's protected

7  conduct.  Second, plaintiff states that D. Barneburg "had notice" of "retaliation and misconduct"

8  and cites to paragraphs within his third amended complaint as support.  (Third Am. Compl. ¶ 94,

9  citing ¶¶ 45, 54, 56, 57, 60, 68, 69, 70, 73, 76, 80, 81, 83, 84, 85.)  However, the court has

10  reviewed the paragraphs to which plaintiff cites as support for his assertion that D. Barneburg

11  had notice of plaintiff's protected conduct.  In all but two of those paragraphs, D. Barneburg was

12  not even mentioned.  In one paragraph, however, plaintiff asserts that D. Barneburg knew that

13  plaintiff filed a grievance because D. Barneburg was the second level reviewer in plaintiff's staff

14  complaint against Short.  (*Id.* ¶ 76.)  However, in that grievance, D. Barneburg ultimately agreed

15  with plaintiff and determined that in fact, Short violated CDCR policy.  (*Id.*)  Although D.

16  Barneburg clearly knew in that instance that plaintiff had filed a grievance, it is not sufficiently

17  clear how a reasonable inference can be made that D. Barneburg had some sort of retaliatory

18  motive against plaintiff as a result.  Plaintiff alleges that D. Barneburg also had notice of

19  plaintiff's protected conduct with respect to the RVR that Sgt. Short issued against plaintiff

20  regarding the purchase of a dictionary for inmate Sosa.  (*Id.* ¶ 85.)  However, that D. Barneburg

21  approved the issuance of the RVR does not show that D. Barneburg then knew that plaintiff

22  challenged the RVR in a subsequent administrative grievance.

23       Moreover, even assuming that the circumstantial evidence showed suspect timing,

24  plaintiff would need more specific evidence to provide a reasonable inference that plaintiff's

25  protected conduct was a substantial or motivating factor for defendants' actions.  Here, there is

26  no evidence that D. Barneburg or Milligan had expressed opposition to plaintiff's protected

27  conduct.  Moreover, plaintiff does not provide any specific evidence to show that D. Barneburg's

28  explanation that his failure to type a receipt for plaintiff was inadvertent was false or pretextual.

Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment; Referring Case to
Settlement Proceedings

1    *See Anthoine*, 605 F.3d at 753.  In other words, plaintiff fails to provide a sufficient or plausible

2    link of causation that defendants' actions or omissions were motivated by plaintiff's protected

3    conduct.  *See Wood*, 753 F.3d at 904.

4           Accordingly, defendants' motion for summary judgment is granted on this claim.

5                 6.   <u>Cell search</u>

6           On December 16, 2011, Frisk became aware of the incoming mail from Burke, Williams,

7    & Sorenson and that the mail contained documents about Short's In-Service Training Records,

8    Employee Positional history, and Post Order or Duty Statement.  (Docket No. 138, Frisk Decl. ¶¶

9    7-8.)  As a result, incoming mail was stopped and the documents destroyed.  Plaintiff was not

10   permitted to possess these documents because the documents included information that could be

11   used by inmates to disrupt the prison.  (*Id.* ¶ 8.)  Frisk declares that, upon learning of attempted

12   prohibited documents, he became concerned that plaintiff might possess additional confidential

13   information, so Frisk ordered IGI Correctional Officers Bassett, Healy, Gongora, and Pimentel to

14   assist Frisk in searching plaintiff's cell.  (*Id.* ¶ 11.)  When Frisk, Bassett, Healy, Gongora, and

15   Pimentel arrived, plaintiff told them he had a court deadline date, and Bassett replied "we know

16   but we are here to search your cell."  (Third Am. Compl. ¶ 102.)  After the search, plaintiff

17   discovered that all of his paperwork had been confiscated.  (*Id.* ¶¶ 102, 103, 108; Frisk Decl. ¶¶

18   15-18.)  At that time, Frisk also informed plaintiff of the disallowed, and subsequently destroyed,

19   mail from Burke, Williams, & Sorenson, the law firm who is representing Short in this

20   underlying federal action.  (Frisk Decl. ¶ 18.)  As previously stated, the mail included two

21   confidential CDCR documents.  Specifically, the "Post Order" or "Duty Statement" for Short

22   included information that could be used by an inmate to disrupt the prison, such as the

23   procedures for how and when IGI Sergeants respond to institution alarms.  Such information

24   could be used by an inmate to disrupt the prison, which "would jeopardize the safety and

25   security of the institution."  The second document was Short's work history which included

26   personal information about Short.  After reviewing all of plaintiff's confiscated paperwork from

27   the cell search, and finding no contraband except for excess books, magazines and trash, the

28   remainder of plaintiff's property was returned on December 22, 2011, one day after plaintiff's

Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment; Referring Case to
Settlement Proceedings

court deadline.  (Frisk Decl. ¶ 16; Third Am. Compl. ¶ 107.)

Plaintiff alleges that Frisk, Bassett, Healy, Gongora and Pimentel conspired and retaliated when they searched plaintiff's cell and confiscated all of plaintiff's legal paperwork.  Plaintiff points out that defendants filed a motion to dismiss in the underlying action on November 21, 2011.[15]  (Docket No. 105.)  On December 9, 2011, plaintiff filed a motion to extend the deadline to file his opposition from December 21, 2011 to March 20, 2012.  (Docket No. 115.)  On December 16, 2011, after defendant Frisk learned about the incoming mail from Burke, Williams, & Sorenson containing confidential documents, Frisk, Bassett, Healy, Gongora, and Pimentel searched plaintiff's cell and confiscated all of plaintiff's paperwork for submission to the IGI office for investigation.  After the investigation, all of plaintiff's paperwork except for the prohibited excess books, magazines and trash was returned to plaintiff on December 22, 2011, one day after plaintiff's court deadline.

Viewing the evidence in the light most favorable to plaintiff, at the time Frisk ordered the cell search, he and the other defendants present for the search knew about plaintiff's lawsuit prior to the search as evidenced by Bassett's acknowledgment to plaintiff that "we know [about your court deadline] but we are here to search your cell."  Moreover, the timing of the cell search is certainly suspect.  In addition, according to plaintiff, defendants knew that plaintiff had an impending court deadline and purposely retained his paperwork until the day after the deadline had passed.  Finally, plaintiff suggests that Frisk's stated reason for ordering the cell search, i.e., because Frisk was concerned that plaintiff might have more confidential documents in his cell, was false because in response to plaintiff's administrative grievance, the second level of review response indicated that plaintiff's cell search was "based on a current investigation on [plaintiff] and other EME members and associates."  (Opp., Pl. Decl., Ex. G-1.)

There is no question that routine cell searches conducted for the purpose of preserving institutional order, discipline, and security further those legitimate penological goals.  *See*

---

[15]  This motion to dismiss was filed by the California Attorney General's office on behalf of all defendants except for Short, who did not join in the motion and is separately represented by Burke, Williams, & Sorenson.

Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment; Referring Case to Settlement Proceedings

1    *Hudson v. Palmer*, 468 U.S. 517, 529 (1984) ("Random searches of inmates, individually or

2    collectively, and their cells and lockers are valid and necessary to ensure the security of the

3    institution and the safety of inmates and all others within its boundaries").  Frisk submitted

4    evidence that based on the mail from Burke, Williams, & Sorenson which contained documents

5    that plaintiff was not allowed to possess for the security of the institution, Frisk was concerned

6    that plaintiff may have had additional prohibited documents in plaintiff's possession.  However,

7    based on the different reasons given by the second level of review and Frisk for the cell search

8    and confiscation of paperwork, a reasonable inference can be made that the reasons are false or

9    pretextual.

10           In addition, a reasonable inference can be made that the retention of plaintiff's paperwork

11   until one day after plaintiff's court deadline was made for a retaliatory purpose.  Viewing the

12   evidence in the light most favorable to plaintiff, plaintiff alleges that on the day of plaintiff's

13   court deadline, a prison librarian called the IGI unit and left a message that plaintiff needed his

14   legal property returned.  (Opp. at 41.)  Although defendants argue that plaintiff was not harmed

15   by missing the court deadline because on January 6, 2012, plaintiff received an extension of time

16   to March 20, 2012, to file his opposition to defendants' motion to dismiss, plaintiff need only

17   demonstrate that his First Amendment rights were chilled, though not necessarily silenced.  *See*

18   *Rhodes*, 408 F.3d at 568-69.  Whether plaintiff was ultimately harmed is not the appropriate test.

19   At the time that defendants held onto plaintiff's paperwork, neither plaintiff nor defendants knew

20   whether the court would grant plaintiff's extension of his deadline.  Finally, defendants do not

21   set forth any evidence that "but for" any retaliatory motive, they still would have retained

22   plaintiff's paperwork until December 22, 2011.  *See Allen v. Scribner*, 812 F.2d 426, 436 (9th

23   Cir.) (recognizing that motivation generally presents a jury question), *amended by* 828 F.2d 1445

24   (9th Cir. 1987).

25           The court finds that there is a genuine issue of material fact as to whether defendants

26   harbored a retaliatory motive.  Accordingly, defendants are not entitled to summary judgment on

27   this claim.

28           For similar reasons, defendants are also not entitled to qualified immunity.  It is clearly

Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment; Referring Case to
Settlement Proceedings

1   established that retaliating against a prisoner for his use of the prison grievance system and for

2   litigating violates a prisoner's constitutional rights.  *See Rhodes*, 408 F.3d at 567; *Pratt*, 65 F.3d

3   at 806 (stating the "prohibition against retaliatory punishment is "clearly established law" in the

4   Ninth Circuit, for qualified immunity purposes").  Viewing the evidence in the light most

5   favorable to plaintiff, it would have been clear to a reasonable prison official that conducting a

6   cell search, confiscating plaintiff's paperwork, and retaining plaintiff's paperwork until after

7   plaintiff misses a court deadline in retaliation for plaintiff's protected conduct violated the law.

8          Accordingly, defendants are not entitled to qualified immunity.

9          B.      Conspiracy

10          A civil conspiracy is a combination of two or more persons who, by some concerted

11   action, intend to accomplish some unlawful objective for the purpose of harming another which

12   results in damage.  *Gilbrook v. City of Westminster*, 177 F.3d 839, 856 (9th Cir. 1999).  To prove

13   a civil conspiracy, the plaintiff must show that the conspiring parties reached a unity of purpose

14   or common design and understanding, or a meeting of the minds in an unlawful agreement.  *Id.*

15   To be liable, each participant in the conspiracy need not know the exact details of the plan, but

16   each participant must at least share the common objective of the conspiracy.  *Id.*  A defendant's

17   knowledge of and participation in a conspiracy may be inferred from circumstantial evidence and

18   from evidence of the defendant's actions.  *Id.* at 856-57.

19          Conclusory allegations of conspiracy are not enough to support a § 1983 conspiracy

20   claim.  *Burns v. County of King*, 883 F.2d 819, 821 (9th Cir. 1989) (per curiam).  Although an

21   "agreement or meeting of minds to violate [the plaintiff's] constitutional rights must be shown,"

22   *Woodrum v. Woodward County*, 866 F.2d 1121, 1126 (9th Cir. 1989), "[d]irect evidence of

23   improper motive or an agreement to violate a plaintiff's constitutional rights will only rarely be

24   available.  Instead, it will almost always be necessary to infer such agreements from

25   circumstantial evidence or the existence of joint action."  *Mendocino Environmental Center v.*

26   *Mendocino County*, 192 F.3d 1283, 1302 (9th Cir. 1999). Thus, "an agreement need not be overt,

27   and may be inferred on the basis of circumstantial evidence such as the actions of the

28   defendants."  *Id.* at 1301.

Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment; Referring Case to
Settlement Proceedings

1    Fatal to most of plaintiff's conspiracy claims is that the court has found that there is no

2    underlying constitutional violation for plaintiff's claims of retaliation, with the exception of the

3    cell search and the RVR.  As the Ninth Circuit has held, "[c]onspiracy is not itself a

4    constitutional tort under § 1983," and it "does not enlarge the nature of the claims asserted by the

5    plaintiff, as there must always be an underlying constitutional violation." *Lacey v. Maricopa*

6    *Cnty.*, 693 F.3d 896, 935 (9th Cir. 2012) (en banc).  The court's finding that there is no

7    constitutional violation for the retaliation claims, except for the cell search and the RVR,

8    therefore necessarily means that there is no viable claim for conspiracy.  *Id.*; *Avalos v. Baca*, 596

9    F.3d 583, 592 (9th Cir. 2010) ("To support a claim of a conspiracy under § 1983, [p]laintiff's

10   [c]omplaint must contain sufficient factual matter to show (1) the existence of an express or

11   implied agreement among the defendant officers to deprive him of his constitutional rights, and

12   (2) an actual deprivation of those rights resulting from that agreement.").  Therefore, plaintiff's

13   conspiracy claims as to all the retaliation claims except for the cell search and the RVR fail as a

14   matter of law, and defendants are entitled to summary judgment.

15   With respect to plaintiff's claims that Frisk, Bassett, Healy, Gongona and Pimentel

16   conspired to retaliate against plaintiff by conducting the cell search, confiscating all of plaintiff's

17   paperwork, and retaining that paperwork until after plaintiff's court deadline had passed, plaintiff

18   concedes that he does not have firsthand knowledge of an agreement among the defendants.

19   (Opp. at 46.)  Nonetheless, plaintiff asserts that he has alleged sufficient evidence that

20   defendants had a "meeting of the minds to deprive [plaintiff] of his rights by conspiring and

21   demonstrating a collaborative mindset."  (*Id.*)

22   The court agrees.  "Whether defendants were involved in an unlawful conspiracy is

23   generally a factual issue and should be resolved by the jury, so long as there is a possibility that

24   the jury can infer from the circumstances (that the alleged conspirators) had a meeting of the

25   minds and thus reached a[n] understanding to achieve the conspiracy's objectives." *Mendocino*

26   *Environmental Center*, 192 F.3d at 1301-02 (internal quotation marks and citation omitted).

27   Having concluded that there is a genuine issue of material fact regarding defendants' retaliatory

28   motive in searching plaintiff's cell, confiscating his paperwork, and retaining that paperwork

Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment; Referring Case to
Settlement Proceedings

1    until after plaintiff's court deadline passed, there is at least a reasonable inference of an implicit

2    agreement among Frisk, Bassett, Healy, Gongona, and Pimentel to retaliate against plaintiff.

3           Plaintiff also claims that Short, D. Barneburg, and Coulter conspired with each other to

4    issue the RVR and find plaintiff guilty of promoting gang activity in retaliation for plaintiff's

5    protected conduct.  Viewing the evidence in the light most favorable to plaintiff, based on the

6    inference that D. Barneburg harbored a retaliatory motive and the inference that the issuance of

7    the RVR did not reasonably advance a legitimate penological goal, the court finds that there is a

8    reasonable inference that Short, D. Barneburg, and Coulter reached an agreement to retaliate

9    against plaintiff.  Although there is an absence of evidence that Coulter knew about plaintiff's

10   protected conduct and thus an absence of evidence that Coulter harbored a retaliatory motive,

11   such a finding does not preclude the finding that there is a genuine issue of material dispute that

12   Coulter was involved in a conspiracy to retaliate.  *See Lacey*, 693 F.3d at 935 ("Conspiracy may,

13   however, enlarge the pool of responsible defendants . . .; the fact of the conspiracy may make a

14   party liable for the unconstitutional actions of the party with whom he has conspired.");

15   *Gilbrook*, 177 F.3d at 856-88 (recognizing that an allegation of conspiracy can be used to prove

16   claims against defendants who need not know the exact details of the plan, but must share the

17   common objective of the conspiracy and who are less directly involved in the underlying

18   constitutional violation).  Moreover, the evidence suggests that the acts of issuing the RVR and

19   finding plaintiff guilty were "unlikely to have [occurred] without an agreement." *Mendocino*

20   *Environmental Center*, 192 F.3d at 1302.  Thus, the court finds that there is a possibility that the

21   jury can infer from the circumstances that the alleged conspirators agreed to achieve the

22   conspiracy's objectives.

23          Accordingly, defendants' motion for summary judgment on plaintiff's claim that Frisk,

24   Bassett, Healy, Gongona, and Pimentel conspired to retaliate against him is DENIED.

25   Defendants' motion for summary judgment on plaintiff's claim that D. Barneburg and Coulter

26   conspired to retaliate against him is DENIED.  Defendants' motion for summary judgment on

27   plaintiff's remaining conspiracy claims is GRANTED.

28

Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment; Referring Case to
Settlement Proceedings

1    C.    Supervisory liability

2        A supervisor may be liable under section 1983 upon a showing of (1) personal

3    involvement in the constitutional deprivation or (2) a sufficient causal connection between the

4    supervisor's wrongful conduct and the constitutional violation. *Henry A. v. Willden*, 678 F.3d

5    991, 1003-04 (9th Cir. 2012).   It is insufficient for a plaintiff only to allege that supervisors knew

6    about the constitutional violation and that they generally created policies and procedures that led

7    to the violation, without alleging "a specific policy" or "a specific event" instigated by them that

8    led to the constitutional violations. *Hydrick v. Hunter*, 669 F.3d 937, 942 (9th Cir. 2012).  A

9    plaintiff must also show that the supervisor had the requisite state of mind to establish liability,

10   which turns on the requirement of the particular claim – and, more specifically, on the state of

11   mind required by the particular claim – not on a generally applicable concept of supervisory

12   liability. *Oregon State University Student Alliance v. Ray*, 699 F.3d 1053, 1071 (9th Cir. 2012).

13   Here, the requisite state of mind is one of deliberate indifference. *See id.* at 1074-75 & n.18.

14       With respect to the retaliation claims upon which the court has granted summary judgment

15   to defendants, the court has already determined that plaintiff has not demonstrated a genuine issue

16   of material fact regarding defendants' personal involvement.  Moreover, plaintiff does not set

17   forth any evidence to support a theory of a causal connection between those defendants' specific

18   conduct and the constitutional violations.  In addition, plaintiff does not provide any non-

19   conclusory evidence that those defendants created a specific policy or procedure that led to any

20   retaliation, *see Hydrick*, 669 F.3d at 942, or that defendants acted with deliberate indifference.

21       In addition, there is an absence of evidence as to defendants' supervisory liability for the

22   claims on which the court has granted summary judgment.  Plaintiff has submitted several inmate

23   declarations in support of his opposition to defendants' motion for summary judgment.  (Docket

24   Nos. 279, 280, 281, 282, 284.)  In general, these inmate declarations unanimously opine that IGI

25   officers harass inmates by interfering with inmates' incoming and outgoing mail.  The

26   declarations also intimate that IGI officers have an unofficial policy of intimidating inmates.

27   However, the declarations do not name any supervisory defendants liable for creating or

28   implementing this unofficial policy. *See Redman v. County of San Diego*, 942 F.2d 1435, 1446

Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment; Referring Case to
Settlement Proceedings

1    (9th Cir. 1991) (en banc).  Nor do the declarations provide non-speculative evidence that the

2    supervisory defendants named in this action knowingly acquiesced to such a policy.  *See Oregon*

3    *State University Student Alliance*, 699 F.3d at 1071.

4         In fact, plaintiff makes a blanket assertion that the supervisory defendants were the

5    supervisors of specific individual defendants who allegedly violated plaintiff's constitutional

6    rights.  (Opp. at 50-51.)  These allegations are conclusory and not supported by sufficient factual

7    content that would allow them to meet the pleading standard articulated in *Iqbal*.  *Compare Starr*

8    *v. Baca*, 652 F.3d 1202, 1216-17 (9th Cir. 2011) (reversing dismissal of claim against supervisor

9    defendant sued in his official capacity for an attack against an inmate involving prison deputies,

10   where plaintiff made "detailed factual allegations that go well beyond reciting the elements of a

11   claim of deliberate indifference") *with Hydrick v. Hunter*, 669 F.3d 937, 941-42 (9th Cir. 2012)

12   (dismissing Section 1983 claim against supervisors in their individual capacities where "instead

13   of the detailed factual allegations in *Starr* . . . plaintiffs' complaint is based on conclusory

14   allegations and generalities, without any allegation of the specific wrong-doing by each

15   defendant").

16        On the other hand, plaintiff has submitted sufficient evidence to defeat summary judgment

17   as to Frisk, who was the supervising IGI officer of Pimentel, Bassett, Healy, and Gongora,

18   regarding Frisk's supervisory liability as to plaintiff's claim that defendants retaliated against him

19   by searching his cell, confiscating his paperwork, and retaining his paperwork until after

20   plaintiff's court deadline had passed.  Plaintiff has also submitted sufficient evidence to defeat

21   summary judgment as to D. Barneburg, who was the supervising IGI officer of Short, regarding

22   D. Barneburg's supervisory liability as to plaintiff's claim that defendants retaliated against

23   plaintiff by issuing the RVR.  Plaintiff has shown a genuine issue of material fact as to Frisk and

24   D. Barneburg's personal involvement as well as a causal connection between their conduct and

25   the constitutional violation.  *Henry A. v. Willden*, 678 F.3d 991, 1003-04 (9th Cir. 2012).

26        Accordingly, with the exception of Frisk and D. Barneburg, defendants are entitled to

27   summary judgment with respect to plaintiff's allegation that they are liable as supervisors.

28

Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment; Referring Case to
Settlement Proceedings

1    D.    State law claims

2          Plaintiff asserts a variety of state law violations.  The court exercised supplemental

3    jurisdiction over them.  Before a state law claim can be brought, whether in state or federal court,

4    the California Tort Claims Act ("CTCA") requires that the claim be presented to the Victim

5    Compensation and Government Claims Board.  *See* Cal. Govt. Code §§ 911.2, 945.4; *Hernandez*

6    *v. McClanahan*, 996 F. Supp. 975, 977 (N.D. Cal.1998) (recognizing that the failure to present

7    timely California tort claims bars plaintiff from bringing them in federal suit).

8          Defendants first assert that plaintiff did not comply with the CTCA, Cal. Govt. Code §

9    945.6(a), because plaintiff failed to submit his federal civil rights complaint within six months of

10   the denial of the state's rejection of plaintiff's claim.  Here, plaintiff's state claims were rejected

11   on June 17, 2010, and notice of the rejection was mailed to plaintiff on June 24, 2010.  The

12   parties agree that plaintiff's federal civil rights complaint was due to be mailed no later than

13   December 24, 2010.  Plaintiff declares that he mailed his federal civil rights complaint by turning

14   it in to Officer Reich for mailing on December 23, 2010.  Thus, the court finds that plaintiff has

15   complied with the CTCA by filing his civil suit within six months of rejection of his claim,

16   pursuant to Cal. Govt. Code § 945.6(a).

17         Defendants also assert that plaintiff has failed to comply with the CTCA because he failed

18   to present them to the Claims Board more than six months after several of the causes of action

19   accrued.  *See* Cal. Govt. Code § 911.2.  In plaintiff's tort claim form, submitted on May 9, 2010,

20   plaintiff claims that the incidents at issue occurred from 2005 through April 25, 2010.  Thus,

21   argue defendants, any of plaintiff's claims that accrued before November 9, 2009 do not comply

22   with Cal. Govt. Code § 911.2, and are thus untimely.  Plaintiff does not address this argument.

23   Based on a review of the record, the court finds that plaintiff's state law claims, which accrued

24   before November 9, 2009, are untimely.

25         Finally, defendants argue that plaintiff's state law claims fail to state a claim because they

26   do not state facts sufficient to establish the elements of each cause of action.  However,

27   defendants rely on California's fact pleading standard, which requires more detail than the federal

28   notice pleading standard.  *See Back v. County of Butte*, 147 Cal. App. 3d 554, 561 (1983) ("The

1  rules of pleading in federal court are generally different from the rules of pleading in California

2  state courts, since the Federal Rules of Civil Procedure recognize a form of "notice pleading,"

3  usually designed simply to put a defendant on notice of the nature of a claim, whereas California

4  requires the pleading of facts."); *cf. Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1265 n.2 (9th

5  Cir. 2006) (distinguishing between California's requirement that the claim "denote[s] the

6  aggregate of operative facts which give rise to a right enforceable in the courts[]" and federal

7  notice pleading standard pursuant to Rule 8(a)) (citation omitted).  Indeed, plaintiff responds that

8  the facts related to his state law claims are identical to those stated in his federal law claims and

9  presented in his third amended complaint.  As such, the court finds that defendants were fairly put

10 on notice under the applicable liberal notice pleading standard set forth in Federal Rule of Civil

11 Procedure 8(a).  *See, e.g.*, *Jones v. Tozzi*, No. 05-CV-0148 OWW DLB, 2006 WL 1582311, at

12 *15 (E.D. Cal. June 2, 2006) (permitting a supplemental state law claim to satisfy the federal

13 notice pleading standard); *Clement v. America Greetings Corp.*, 636 F. Supp. 1326, 1328 (S.D.

14 Cal. 1986) ("The manner and details of pleading in the federal court are governed by the Federal

15 Rules of Civil Procedure regardless of the substantive law to be applied in the particular action.").

16        Accordingly, defendants' motion for summary judgment as to plaintiff's state law claims

17 that accrued before November 9, 2009, is granted because those claims are untimely.

18 Defendants' motion for summary judgment as to plaintiff's remaining state law claims are denied.

19 V.    Referral to Settlement Proceedings

20        In the court's order granting in part and denying in part defendant Short's motion for

21 summary judgment, the court appointed counsel to represent plaintiff for the remainder of this

22 case.  The appointment shall include representation with respect to the remaining claims set forth

23 above.  In addition, the court finds good cause to refer this matter to Magistrate Judge Nathanael

24 Cousins for settlement proceedings.  The proceedings will consist of one or more conferences as

25 determined by Judge Cousins.  If these settlement proceedings do not resolve this matter, the

26 court will then set this matter for trial.

27                                    **CONCLUSION**

28        1.    Plaintiff's claims regarding events that occurred prior to 2007 are voluntarily

Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment; Referring Case to
Settlement Proceedings

dismissed.  Those claims are dismissed without prejudice.  Defendants' motion for summary

judgment is DENIED in part and GRANTED in part.  Summary judgment is DENIED as to

plaintiff's claims of: (1) retaliation for searching plaintiff's cell, confiscating his paperwork, and

retaining them until after plaintiff's court deadline had passed; (2) conspiracy to retaliate for the

same; (3) retaliation for issuing and approving an RVR; (4) conspiracy to retaliate by approving

an RVR and finding plaintiff guilty; and (5) plaintiff's state law claims accruing after November

9, 2009.  Summary judgment is GRANTED as to the remaining claims.

     2.     The instant case is REFERRED to Judge Cousins for settlement proceedings on

the remaining claims in this action, as described above, within **ninety (90) days** of the date

counsel is located and appointed for plaintiff.  Judge Cousins shall coordinate a time and date for

a settlement conference with all interested parties or their representatives.

     3.     The instant case is STAYED pending the result of the settlement conference

proceedings.  The clerk shall ADMINISTRATIVELY CLOSE this case file until further order of

the court.

     IT IS SO ORDERED.

DATED:  March 31, 2015

LUCY H. KOH
United States District Judge

Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment; Referring Case to Settlement Proceedings